

**MEMO ENDORSED**

**MELONI & McCAFFREY, P.C.**
ATTORNEYS AT LAW
1350 Avenue of the Americas
Suite 3100
New York, N.Y. 10019
Facsimile: (800)659-3985
www.m2law.net

RECEIVED MAR 20 2008 CHAMBERS OF KEVIN CASTEL U.S.D.J.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/20/08

ROBERT S. MELONI
THOMAS P. MCCAFFREY

Writer's Direct Telephone: (212) 957-55__
E-mail: R.Meloni@m2law.net

March 19, 2008

**BY FEDERAL EXPRESS & Filed via ECF**

Honorable P. Kevin Castel
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Suite 2260
New York, New York 10007

Upon reconsideration, my prior order is vacated. So ordered.
[signature] USDJ
3-20-08

Re: *Victory Records, Inc., et al. v. Virgin Records America, Inc.,*
Case No.: 08 CV 000314 (PKC)

Dear Judge Castel:

We represent plaintiffs Victory Records, Inc. and Another Victory, Inc. (collectively "Victory") in the above referenced action. We write in response to the letter of Andrew Bart, counsel for defendant Virgin Records America, Inc. ("Virgin") dated March 18, 2008.

We drafted this response prior to our receipt moments ago of a notice generated by the CM/ECF system that the Court had issued an order granting Defendant's request for an adjournment of the initial pre-trial conference, and waiving the pre-motion conference requirement. Nevertheless, we feel it appropriate to send our response particularly since the memo endorsed letter has already been filed via CM/ECF. An examination of the letter proves that this poorly played card does not help defendant's cause, as it cannot make a "clear and convincing" showing that transfer under Section 1404 is proper. This is particularly so since, as explained in greater detail below, the "pending" case upon which Virgin rests its argument was stayed one month ago pursuant to 11 U.S.C. 362 when the plaintiffs in that action -- the surviving members of the band Hawthorne Heights -- filed for protection under Chapter 7 of the Bankruptcy Act in the U.S. Bankruptcy Court for the Southern District of Ohio.

Victory filed this action in this Court on January 14, 2008 asserting separate claims against defendant for tortious interference with contract and tortious interference with business relations. The basis for filing in the Southern District of New York was that defendant's offices and documents are here, the relevant witnesses are based in New York and a substantial part of the

Hon. P. Kevin Castel
March 19, 2008
Page 2

tortious conduct occurred in this district. The key non-party witnesses – i.e., the members of the band Hawthorne Heights, are residents of the state of Ohio. The other key non-party witnesses – i.e., the band's one time business attorney, Daniel Friedman, and their former personal managers, Rick Smith and John Germanario, are residents of the states of Missouri, Michigan and New York, respectively. Thus, any depositions of those witnesses must take place in Ohio, Missouri, Michigan and New York even if the action were transferred to Illinois. Indeed, even if the action were transferred to the Northern District of Illinois, plaintiff would be forced to depose defendant's corporate officers here in New York. *See e.g., Snow Becker Krauss P.C. v. Provectos e Instaciones de Desalacion, S.A.*, No. 92 Civ 2644, 1992 WL 395598, *3 S.D.N.Y. Dec. 11, 1992)(Where a corporation is involved as a defendant to the litigation, there is a general presumption in favor of conducting depositions of a corporation in its principal place of business). Finally, both the attorneys for defendant and plaintiffs are based in New York.

It is true that in the summer of 2006, Hawthorne Heights, a band that is signed to Victory, brought an action against Victory in the Northern District of Illinois ("Hawthorne Heights Action"), seeking, among other things, a declaratory judgment that the band was no longer bound under its recording and publishing agreement with Victory (the "Victory Agreement").

It is also true that in the fall of 2006 Victory filed a prior action against defendant in the Northern District of Illinois. Victory alleged that Virgin had tortiously interfered with the Victory Agreement. Victory voluntarily discontinued that action without prejudice upon defendant's repeated representation that they had not done anything to interfere with the contract between Victory and the band Hawthorne Heights. No discovery had yet taken place in either of the actions at the time of the discontinuance. Victory took Virgin at its word.

Defendant's recitation of the history of the Hawthorne Heights Action failed to disclose that Judge Moran also ruled in 2007 that while the Victory Agreement was non-exclusive, the contract nonetheless remained extant, including Hawthorne Heights' contractual obligations to Victory to deliver an additional album within a reasonable time. Under music industry standards, Hawthorne Heights' refusal and failure to deliver an album to Victory for over two years since delivery of its last album is an additional breach under Judge Moran's ruling.

Victory continued to vigorously defend the Hawthorne Heights Action. Victory conducted significant document discovery of both Hawthorne Heights and the band's representatives in the Hawthorne Heights Action. Victory also obtained documents from and took the deposition of the non-party Jeffrey Kempler. Mr. Kempler was, during the relevant time period, an Executive Vice President of Virgin. He remains an employee of Virgin.

The documentation obtained from Mr. Kempler and others established that Virgin had been an instigator and integral part of the plan to free Hawthorne Heights from the Victory Agreement. The documents establish that beginning with meetings in New York City in March 2006 between the band's lawyer, Daniel Friedman, Mr. Kempler and David Wolter, a senior director of Virgin's Artist & Repertoire Department, a plan was hatched whereby Hawthorne Heights would, with the guidance and assistance of Virgin, retain the powerful national law firm

Hon. P. Kevin Castel
March 19, 2008
Page 3

Kaye Scholer, privately and publicly repudiate their contract with Victory, and then file a high visibility lawsuit in an attempt to force Victory into a quick capitulation. Finally the documents establish Mr. Kempler's role as the primary architect of the plan and how Virgin creatively funded the litigation. The documents also establish that other officers of Virgin were aware and/or involved with this scheme. It was only after obtaining this irrefutable proof, months after the voluntary dismissal without prejudice of the Illinois action, that Victory filed the present action against Virgin Records America, Inc. in the Southern District of New York.

Defendant's argument that this action should be transferred to the Northern District of Illinois because that is where the Hawthorne Heights Action is "pending" fails to disclose the determinant fact that on February 29, 2008, all of the surviving members of the band Hawthorne Heights[1] filed for protection under Chapter 7 of the Bankruptcy Act in the U.S. Bankruptcy Court for the Southern District of Ohio.[2] These filings automatically stayed the Hawthorne Heights Action. *See* 11 U.S.C. 362. We had been advised by the band's new counsel that it is the band's plan to, *inter alia*, reject the Victory Agreement as part of the bankruptcy proceedings. *See* 11 U.S.C. 365. Victory will be left to stand in line with the other unsecured creditors. Thus, there will be no determination by Judge Moran in the Northern District of Illinois as to whether Hawthorne Heights breached the Victory Agreement. Nor will there be any possibility of inconsistent rulings to trouble this Court.

A district court generally should disturb a plaintiff's choice of forum only if, on balance, the following factors clearly favor transfer: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the location of relevant documents and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the forum's familiarity with the governing law; (7) the relative financial means of the parties; (8) the weight afforded plaintiff's choice of forum; and (9) trial efficiency and the interests of justice generally. *See Gould Paper Corp. v. Gomez*, No. 07 Civ. 6087, 2008 WL 113900, *2 (S.D.N.Y. Jan. 11, 2008); *Anadigics, Inc. Raytheon Co.*, 903 F. Supp.2d 615, 617 (S.D.N.Y. 1995). The burden rests on defendant to make a "clear and convincing" showing that transfer under section 1404 is proper. *Gould Paper Corp.*, 2008 WL 113900, at *3. As demonstrated above, Virgin cannot make that showing.

Respectfully submitted,

MELONI & McCAFFREY, P.C.

By: _____
Robert S. Meloni

cc: Andrew Bart, Esq. (via Email)

---

[1] One member, Casey Calvert, died from a drug overdose in November 2007.
[2] Case Nos. 3-08-bk-30909, 3-08-bk-30911, 3-08-bk-30912 and 3-08-bk-30914.