UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

VICTORY RECORDS, INC., and ANOTHER :
VICTORY, INC., :

                                          :      Case No.: 08-CV-00314 (PKC)

                        :

              Plaintiffs, :

                        :

    - against - :

                        :

VIRGIN RECORDS AMERICA, INC., :
a division of EMI MUSIC NORTH AMERICA, :

                        :

             Defendant. :

------------------------------------------------------------------X

 

 

**MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION BY DEFENDANT VIRGIN RECORDS AMERICA, INC.
<u>TO TRANSFER OR, IN THE ALTERNATIVE, STAY THIS ACTION</u>**

15817.5

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 4

ARGUMENT ................................................................................................................ 7

   I.   THIS COURT SHOULD TRANSFER THIS ACTION TO THE
       NORTHERN DISTRICT OF ILLINOIS WHERE A RELATED
       ACTION IS PENDING ..................................................................................... 7

      A. The New York Action Could Have Been Brought in Illinois ........................ 8

      B. Transfer of the New York Action Would Serve the Interests of
         Convenience and Fairness ............................................................................. 9

         1.   Trial Efficiency and the Interests of Justice Based on the
             Totality of the Circumstances ............................................................... 10

         2.   Location of Relevant Documents and the Relative Ease of
             Access to Sources of Proof .................................................................... 11

         3.   Illinois is More Convenient For The Witnesses .................................... 12

         4.   The Forum's Familiarity With the Governing Law ............................... 13

         5.   Plaintiffs' Choice of Forum Should Be Entitled Less Weight
             Since It Is Not Their Home Forum ........................................................ 14

  II.  IN THE ALTERNATIVE, THIS COURT SHOULD STAY THIS
      ACTION PENDING RESOLUTION OF THE ILLINOIS ACTION ............... 15

CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*800-Flowers, Inc. v. Intercontinental Flowers, Inc.*,
  860 F. Supp. 128 (S.D.N.Y. 1994) ...................................................................... 15

*Altschuler v. University of Pennsylvania Law School*,
  1997 U.S. Dist. LEXIS 3248, (S.D.N.Y. March 21, 1997) ...................................... 14

*Andrews v. Lasser Marshall, Inc.*,
  1997 U.S. Dist. LEXIS 15508 (S.D.N.Y. Oct. 6, 1997) ..................................... 17, 18

*AroChem International, Inc. v. Buirkle*,
  968 F.2d 266 (2d Cir. 1992)................................................................................ 13

*Berg v. First American Bankshares, Inc.*,
  576 F. Supp. 1239 (S.D.N.Y. 1983)..................................................................... 10

*Bionx Implants, Inc. v. Biomet, Inc.*,
  1999 WL 342306 (S.D.N.Y. May 27, 1999) ....................................................... 8, 9

*Brown v. Dow Corning Corp.*,
  1996 WL 257614 (S.D.N.Y. May 15, 1996) ...................................................... 9, 15

*Citrus Marketing Board of Israel v. J. Lauritzen A/S*,
  943 F.2d 220 (2d Cir. 1991).............................................................................. 16

*Coady v. Ashcraft & Gerel*,
  223 F.3d 1 (1st Cir. 2000)................................................................................. 10

*Continental Insurance Cos. v. Wickes Cos.*,
  1991 U.S. Dist. LEXIS 12426, (S.D.N.Y. Sept. 6, 1991)..................................... 13

*Durham Productions v. Sterling Film Portfolio*,
  537 F. Supp. 1241 (S.D.N.Y. 1982)..................................................................... 10

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,
  156 F.3d 310 (2d Cir. 1998)................................................................................ 16

*Ferens v. Deere Co.*,
  494 U.S. 516, 108 L. Ed. 2d 443, 110 S. Ct. 1274 (1990).............................. 13, 14

*Frink American Inc. v. Champion Machine Ltd.*,
  48 F. Supp. 2d 198 (N.D.N.Y. 1999).................................................................... 14

*FTC v. Essex Marketing Group, Inc.*,
  2006 U.S. Dist. LEXIS 73354  (E.D.N.Y. Sept. 22, 2006)..................................... 16

15817.5

*George A. Fuller Co. v. Chicago College of Osteopathic Medicine*,
  719 F.2d 1326 (7th Cir.1983) ........................................................................ 11

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501, (1947) ................................................................................... 14

*Hidden Brook Air, Inc. v. Thabet Aviation International, Inc.*,
  241 F. Supp. 2d 246 (S.D.N.Y. 2002) ........................................................ 13, 14

*Hikers Industrial, Inc. v. William Stuart Industrial Ltd.*,
  640 F. Supp. 175 (S.D.N.Y. 1986) ................................................................. 17

*Howard v. Four Seasons Hotels*,
  1997 U.S. Dist. LEXIS 2598 (S.D.N.Y. March 6, 1997) ................................ 13, 14

*In re Cuyahoga Equipment Corp.*,
  980 F.2d 110 (2d Cir. 1992) ........................................................................... 9

*In re Warrick*,
  70 F.3d 736 (2d Cir. 1995) ............................................................................ 15

*Klaxon Co. v. Stentor Electric Manufactuing Co.*,
  313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941) ..................................... 13

*Krock v. Lipsay*,
  97 F.3d 640 (2d Cir. 1996) ............................................................................ 13

*Landis v. North American Co.*,
  299 U.S. 248, 81 L. Ed. 153, 57 S. Ct. 163 (1936) ....................................... 16

*Liquifuels, Inc. v. Hess Oil & Chemical Co.*,
  281 F. Supp. 596 (S.D.N.Y. 1968) ................................................................. 17

*Lynch v. Ford Motor Co., Inc.*,
  957 F.Supp. 142 (N.D.Ill.1997) ..................................................................... 12

*Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg*,
  1992 U.S. Dist. LEXIS 14289 (S.D.N.Y. Sept. 22, 1992) ............................ 17, 18

*Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., Inc.*,
  339 F.2d 440 (2d Cir. 1964) ........................................................................... 16

*Nieves v. American Airlines*,
  700 F. Supp. 769 (S.D.N.Y. 1988) ................................................................. 10

*Orange Chicken, L.L.C. v. Nambe Mills, Inc.*,
  2000 U.S. Dist. LEXIS 18214 (S.D.N.Y. Dec. 19, 2000) ................................ 17

iii

*Orb Factory Ltd. v. Design Science Toys, Ltd.*,
    6 F. Supp.2d 203 (S.D.N.Y. 1998) ........................................................................... 8

*Recoton Corp. v. Allsop, Inc.*,
    999 F. Supp. 574 (S.D.N.Y. 1998) ......................................................................... 9

*RKI, Inc. v Grimes*,
    200 F. Supp. 2d 916 (N.D. Ill. 2002) ................................................................... 15

*Robomatix International, Inc. v. Aluminum Co. of America*,
    1993 U.S. Dist. LEXIS 7034 (S.D.N.Y. May 20, 1993).......................................... 15

*Schultz v. Boy Scouts of America, Inc.*,
    65 N.Y.2d 189, 480 N.E.2d 679, 491 N.Y.S.2d 90 (1985)................................. 13, 14

*Sea Spray Holdings, Ltd. v. Pali Finance Group, Inc.*,
    269 F. Supp. 2d 356 (S.D.N.Y. 2003)................................................................... 16

*Sierra Rutile Ltd. v. Katz*,
    937 F.2d 743 (2d Cir. 1991)................................................................................. 17

*Societe Nationale Pour La Recherche, Etc. v. General Tire & Rubber Co.*,
    430 F. Supp. 1332 (S.D.N.Y. 1977) ..................................................................... 17

*Xerox Corp. v. 3Com Corp.*,
    69 F. Supp.2d 404 (W.D.N.Y. 1999) ............................................................... 16, 17

15817.5

Defendant Virgin Records America, Inc. ("Virgin") respectfully submits this memorandum in support of its motion (1) to transfer the above-captioned action (the "New York Victory Action") commenced by plaintiffs Victory Records, Inc. (individually, "Victory") and Another Victory, Inc. (collectively, "Plaintiffs") to the Northern District of Illinois where a related action is pending, pursuant to 28 U.S.C. § 1404(a); or, in the alternative (2) to stay the New York Victory Action pending resolution of the related action that is pending in the Northern District of Illinois.

## PRELIMINARY STATEMENT

The instant motion is Plaintiffs' second suit alleging interference with contractual relations against Virgin arising from the same core set of facts. They filed the first one in the Northern District of Illinois -- the district in which Plaintiffs have their corporate offices. Because Victory perceived that the Court in the Northern District of Illinois was not sympathetic to its position, it dismissed that case and, six months later, initiated a virtually identical claim against Virgin in this Court. Plaintiffs' actions are blatant forum shopping and should not be condoned by this Court.

Plaintiffs' claims arise out of a recording agreement which was entered into on or about December 11, 2003 between Plaintiffs and the recording group, Hawthorne Heights (the "Victory Agreement"). In the summer of 2006, Hawthorne Heights initiated an action in the Northern District of Illinois against Plaintiffs alleging claims for copyright infringement, trademark infringement, unfair competition, invasion of privacy, fraud, interference with business relations, rescission and declaratory judgment (the "Hawthorne Heights Action"). In response, Victory asserted counterclaims asserting, *inter alia*, that Hawthorne Heights had breached the Victory Agreement.

1

Shortly thereafter, Plaintiffs initiated a separate action in the same court against Virgin for tortious interference with contractual relations (*i.e.*, that Virgin allegedly interfered with the Victory Agreement) (the "Illinois Victory Action"). Strikingly, Victory did not designate the second action as a related action despite the fact that both actions revolved around whether Victory or Hawthorne Heights breached the Victory Agreement. Accordingly, the Illinois Victory Action was assigned to a different judge than the judge handling the Hawthorne Heights Action. Several months later, after an initial ruling in their favor in the Hawthorne Heights Action, Plaintiffs moved to consolidate the two actions on the grounds that the actions were sufficiently related. Despite the fact that all the information cited by Plaintiffs in support their motion to consolidate the two actions was known to them before they commenced the Illinois Victory Action, Plaintiffs waited until after they received a favorable decision in the Hawthorne Heights Action before informing the Court of the pending Illinois Victory Action and seeking consolidation. Although it was evident that Plaintiffs had engaged in forum shopping, the Court in the Hawthorne Heights Action found that the two cases were sufficiently related and that the Victory Action should be reassigned to proceed before the same judge.

Thereafter, the Court in the Hawthorne Heights Action issued several decisions on the merits which were sharply adverse to Plaintiffs. Most significantly, the Court in the Hawthorne Heights Action found that the Victory Agreement was non-exclusive and that Hawthorne Heights was free to record for other parties during the term of its contract with Plaintiffs. Recognizing the negative impact of such an opinion on their tortious interference claim, Plaintiffs decided to enter into a stipulation with Virgin to discontinue the Illinois Victory Action. Now, six months after they dismissed the Illinois Victory Action, Plaintiffs filed an action in this Court asserting the same claim for tortious interference with contractual relations,

2

in addition to a claim for tortious interference with business relations, arising out of the same set of facts.

In analyzing the bona fides of Victory's decision to file the instant action in New York, it is critical to remember that Victory moved to consolidate the Hawthorne Heights Action and the Illinois Victory Action <u>and</u> received a ruling from the District Court in the Northern District of Illinois that the Hawthorne Heights Action and the Illinois Victory Action were related cases. Nonetheless, when Plaintiffs filed the New York Victory Action, they failed to even indicate at the filing that there was a related case pending in Illinois. Further, Plaintiffs have no connection to this district. Indeed, Plaintiffs are both Illinois corporations with their principal place of business in Chicago, Illinois. So the pivotal questions are why would Illinois entities with no connection to this district file this action here and why are they resisting transfer to their home district.

As previously recognized by the Court in the Hawthorne Heights Action, Plaintiffs' tortious interference claims significantly overlap with the claims that are currently pending before the Court in the Northern District of Illinois. To conserve judicial time and effort, all such claims should be before the same judge. Moreover, Plaintiffs should not be rewarded for their blatant forum shopping. Accordingly, the Court should transfer this Action back to the Northern District of Illinois.

Further, allowing this action to proceed while the Hawthorne Heights Action is still pending exposes the parties to duplicative litigation and substantially maximizes the substantial risk of inconsistent rulings on a key issue of both litigations, namely, whether there has been a breach of the Victory Agreement. Accordingly, should this Court deny the instant motion to transfer the New York Victory Action, it should stay the instant action pending resolution of the Hawthorne Heights Action.

3

15817.5

## STATEMENT OF FACTS

On or about August 7, 2006, recording artists Eron Bucciarelli-Tieger, Casey Calvert, Micah Carli, Matt Ridenour, JT Woodruff and Hawthorne Heights, LLC (collectively, "Hawthorne Heights") brought an action against Plaintiffs asserting claims for copyright infringement, trademark infringement, unfair competition, invasion of privacy, fraud, interference with business relations, rescission and declaratory judgment (the Hawthorne Heights Action). *See* accompanying Declaration of Andrew H. Bart dated April 17, 2008 (the "Bart Declaration") at ¶ 4. Plaintiffs answered Hawthorne Heights' claims and asserted a number of counterclaims. Bart Declaration at ¶ 5. The claims and counterclaims in the Hawthorne Heights Action arise out of the parties' performance under the Victory Agreement. *Id.* The Hawthorne Heights Action requires a determination of whether either or both of the parties are in breach of the Victory Agreement.

On or about November 2, 2006, Plaintiffs instituted a separate action against Virgin and EMI Music North America in the Northern District of Illinois asserting a claim for tortious interference with Victory's contractual relations with Hawthorne Heights (the "Illinois Victory Action"). Bart Declaration at ¶ 6. That interference claim was premised on the assertion that Virgin had interfered with Victory's rights under the Victory Agreement. *Id.* Nowhere in the Complaint or the papers contained in the filing of the Victory Action did Plaintiffs mention the pendency of the Hawthorne Heights Action. *Id.*

On or about January 10, 2007, the Court in the Hawthorne Heights Action issued an opinion finding that the Victory Agreement was not terminable at will. Bart Declaration at ¶ 7. Concluding that the judge presiding over the Hawthorne Heights Action, Judge Moran, might be favorably disposed to their position, Plaintiffs filed a motion to consolidate the Hawthorne Heights Action with the pending Illinois Victory Action. Bart Declaration at ¶ 8. That motion

4

consisted solely of facts that were known to Plaintiffs at the time they initially filed the Illinois

Victory Action as a separate, unrelated action. Despite the manifest forum shopping evidenced

by this behavior, Judge Moran concluded that the Illinois Victory Action was related to the

Hawthorne Heights Action and should proceed before the same judge. Bart Declaration at ¶ 9.

The Court found that "[b]oth cases arise out of the same fight, and having one Judge handling

both may likely result in a substantial saving of judicial time and effort." *Id.*

Plaintiffs' procedural shenanigans did not end at that point, however. Subsequent to

making the motion to consolidate, Judge Moran entered several decisions in the Hawthorne

Heights Action that were unfavorable to Victory. First, by decision dated March 1, 2007, the

Court determined that the Victory Agreement was non-exclusive and that Hawthorne Heights

was free to record for other parties during the term of its contract with Plaintiffs. Bart

Declaration at ¶ 10. Then, by decision dated May 16, 2007, the Court denied Plaintiffs' motion

for reconsideration of its March 1 decision and found that Plaintiffs were merely "required to

deliver an album to Victory within a reasonable time." Bart Declaration at ¶ 11. Finally, by

decision dated May 17, 2007, the Court granted Hawthorne Heights' motion for a preliminary

injunction and enjoined Plaintiffs from interfering with Hawthorne Heights' right to record new

material with a producer or label of its choosing. Bart Declaration at ¶ 12. No longer of the

belief that Judge Moran was favorably disposed to their position and recognizing that it would be

virtually impossible to prove that Virgin intentionally induced Hawthorne Heights to breach the

Victory Agreement where the Court determined the agreement was non-exclusive and that

Hawthorne Heights had the right to record with any label of its choosing, on or about July 5,

2007, Plaintiffs entered into a stipulation with Virgin to voluntarily dismiss the Illinois Victory

Action. Bart Declaration at ¶ 13.

As bad as Victory's procedural gamesmanship had been up to this point, it got even more blatant and offensive. Despite having previously sued Virgin in the Northern District of Illinois and having moved to consolidate that case with the Hawthorne Heights Action, Plaintiffs now initiated the instant action against Virgin in the Southern District of New York asserting the same claim for tortious interference with contract it had previously asserted in the Illinois Victory Action and a claim for tortious interference with business relations (the "New York Victory Action").

The New York Victory Action contains many of the same factual allegations that were asserted in the Illinois Victory Action and asserts the same claim against Virgin for tortious interference with contractual relations. Further, Plaintiffs have no connection to this forum. Bart Declaration at ¶ 14. As conceded in the Complaint, Plaintiffs are both Illinois corporations with their principal places of business in Illinois. Bart Declaration at ¶¶ 3, 14. Plainly, Plaintiffs' decision to file the New York Victory Action in this Court is pure procedural gamesmanship. Accordingly, in the interests of justice, this Court should transfer the New York Victory Action to the Northern District of Illinois, where the action was initially brought and where the related Hawthorne Heights Action is pending.[1]

---

[1] In their pre-motion correspondence to the Court, Plaintiffs represented that Hawthorne Heights recently filed a voluntary petition for bankruptcy and that the Hawthorne Heights Action is presently stayed. See Bart Decl. at ¶ 15. However, there are no facts contained on the docket sheet in the Hawthorne Heights Action in the Northern District of Illinois that are supportive of Plaintiffs' representations concerning the bankruptcy and any alleged stay of the Hawthorne Heights Action. See Bart Decl. at ¶ 16. Similarly, Plaintiffs' statements in their pre-motion correspondence concerning conversations with counsel for Hawthorne Heights and Hawthorne Heights' purported legal strategy have no probative value. Further, whether the Hawthorne Heights Action will be removed to federal bankruptcy court and proceed before the bankruptcy court as an adversary proceeding is entirely unclear. More importantly, Plaintiffs' representations do not change the facts that prompted this motion. Victory has engaged in blatant forum shopping and this Court should transfer the instant Action back to the Northern District of Illinois in the interest of justice and for the convenience of the witnesses.

15817.5

In the alternative, since the decision the Court in the Hawthorne Heights Action will make as to whether there has been a breach of the Victory Agreement may be dispositive of Plaintiffs' tortious interference with contract claim, if this Court does not transfer this action, it should stay this action pending resolution of the Hawthorne Heights Action.

## ARGUMENT

**I.    THIS COURT SHOULD TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF ILLINOIS WHERE A RELATED ACTION IS PENDING**

This Court should reject Plaintiffs' blatant attempt at forum shopping and should transfer this Action to the Northern District of Illinois where the related Hawthorne Heights Action is currently pending. There can be no good faith dispute that the sole purpose of filing the instant action in New York is to steer this case away from Judge Moran in the Hawthorne Heights Action. Plaintiffs are located in Illinois. There is no reason for them to sue here. Moreover, Judge Moran is already fully familiar with the Victory Agreement and the parties' performance thereunder; but that is precisely the problem for Plaintiffs. Judge Moran has rendered a number of decisions on the merits which are adverse to Plaintiffs and which potentially undermine Plaintiffs' claims against Virgin. As such, Plaintiffs would much rather take their chances before another judge and risk the possibility of increased cost and inconsistent adjudication in the hopes of a more favorable result.

As discussed above, Victory has been engaging in this type of gamesmanship since the filing of the Illinois Victory Action. First, Plaintiffs filed the Illinois Victory Action as an independent action. Then, Plaintiffs moved to consolidate the Hawthorne Heights Action with the Illinois Victory Action. Finally, only after receiving unfavorable decisions by the Court in the Hawthorne Heights Action, Plaintiffs decided to dismiss their tortious interference claims against Virgin and to re-file their tortious interference claims against Virgin in New York as an

7

entirely new case. Indeed, in a clear attempt to disguise their forum-shopping, Plaintiffs initiated

the instant action without any reference to the related action that is pending in Illinois. As

already determined by the Court in the Hawthorne Heights Action, Plaintiffs' tortious

interference claims against Virgin arise from the same set of facts that are currently at issue in

the Hawthorne Heights Action and should be before the same judge.

As such, Virgin can demonstrate that the "the action could have been brought in the

district to which transfer is proposed," and that "the transfer would serve the convenience of the

parties and witnesses and is in the interests of justice." *Bionx Implants, Inc. v. Biomet, Inc.*, No.

99 Civ. 740, 1999 WL 342306, at *2, *3 (S.D.N.Y. May 27, 1999); accord *Orb Factory Ltd. v.

Design Science Toys, Ltd.*, 6 F. Supp.2d 203, 208 (S.D.N.Y. 1998).

### A. **The New York Action Could Have Been Brought in Illinois**

Plaintiffs cannot dispute that the action could have been brought in the Northern District

of Illinois. Indeed, this very action was initially brought by Plaintiffs against Virgin in the

Northern District of Illinois, where the Illinois Hawthorne Heights Action is pending against

Victory. Plaintiffs even moved to consolidate the case with the Hawthorne Heights Action. The

Court found that the two cases should be before the same judge who is already familiar with the

facts governing Plaintiffs' claims. However, before it issued its decision to reassign the Illinois

Victory Action as a related action, the Court in the Hawthorne Heights Action rendered several

decisions which were unfavorable to Plaintiffs. Concluding that Judge Moran might be hostile to

their position, Plaintiffs decided that it was imperative to get the Victory Action into a different

court. Since they had previously filed a motion to transfer the case to Judge Moran, they knew

they would need a different strategy. Accordingly, they decided to execute a stipulation of

dismissal without prejudice with Virgin, and later re-file the same claims in a different court.

8

There is no question that this action could have been brought in the Northern District of Illinois -- it originally was brought there. This action should now be transferred back to that Court since it already has been judicially determined to be related to the pending Hawthorne Heights Action.

### B. Transfer of the New York Action Would Serve the Interests of Convenience and Fairness

In addition, Virgin can demonstrate that the transfer of the instant action would be in the interests of justice. This determination "lie[s] within the broad discretion of the district court," and consideration is based "upon notions of convenience and fairness on a case-by-case basis." *Brown v. Dow Corning Corp.*, No. 93 Civ. 5510, 1996 WL 257614, at *2 (S.D.N.Y. May 15, 1996) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)). *See also Bionx*, 1999 WL 342306, at *3 ("Section 1404(a) allows a district judge considerable discretion").

To determine whether a transfer would serve the interests of convenience and fairness, courts consider the following factors: (1) the place where the operative facts occurred (the locus of operative facts); (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the relative means of the parties; (5) the convenience of the witnesses; (6) the availability of process to compel attendance; (7) the forum's familiarity with the governing law; (8) the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 574, 577 (S.D.N.Y. 1998) (citations omitted); *Brown v. Dow Corning Corp.*, No. 93 Civ. 5510, 1996 WL 257614, at *2 (S.D.N.Y. May 15, 1996). An analysis of the foregoing factors strongly suggests that the New York Action should be transferred to the Northern District of Illinois.

9

1.  Trial Efficiency and the Interests of Justice Based on the Totality of the
    Circumstances

Trial efficiency and the interests of justice weigh squarely in favor of transferring the

instant New York Victory Action to the Northern District of Illinois, where the Illinois

Hawthorne Action is pending.  As the Court in the Hawthorne Heights Action has already

determined, the Court in the Hawthorne Heights Action is best suited to here Plaintiffs' tortious

interference claims is best suited to hear Plaintiffs' claims against Virgin.  Bart Declaration at ¶

9.  *See, also e.g.*, *Coady v. Ashcraft & Gerel*, 223 F.3d 1 (1st Cir. 2000) (transfer was appropriate

remedy where there was overlapping litigation); *Nieves v. Am. Airlines*, 700 F. Supp. 769, 773

(S.D.N.Y. 1988) (transfer is "particularly appropriate where there is a pending lawsuit in the

transferee district involving the same facts, transactions or occurrences"); *Berg v. First American*

*Bankshares, Inc.*, 576 F. Supp. 1239 (S.D.N.Y. 1983); *Durham Productions v. Sterling Film*

*Portfolio*, 537 F. Supp. 1241 (S.D.N.Y. 1982).  Likewise, the most efficient use of this Court's

resources would be to transfer Plaintiffs' case to a judge who is already familiar with the relevant

facts underlying the instant action and one who is familiar with Illinois law on claims of tortious

interference.  Transfer of an action to a district where a related case is pending "enables more

efficient conduct of pretrial discovery, saves witnesses time and money . . . and avoids

duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the

parties while at the same time serving the public interest." *Nieves v. Am. Airlines*, 700 F. Supp.

at 773.

Indeed, as the Court in the Illinois Hawthorne Heights Action has already found, "[b]oth

cases arise out of the same fight, and having one Judge handling both may likely result in a

substantial saving of judicial time and effort." Bart Declaration at ¶ 9.  Plaintiffs' decision to file

10

the instant action here in New York, indeed, without any mention of the pending litigation in Illinois, was done in bad faith and must be rejected.

2. Location of Relevant Documents and the Relative Ease of Access to Sources of Proof

In order to succeed on their tortious interference with contract claim, Plaintiffs will need to demonstrate, *inter alia*, that Hawthorne Heights breached the Victory Agreement and that Plaintiffs were damaged as a result of any such breach. *See George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1330 (7th Cir.1983). None of the witnesses relevant to such a determination are present in New York and none of the relevant documents to support these elements are located in New York. Instead, any such documents are located in Illinois, Ohio, Missouri and California where the parties to the Victory Agreement and witnesses are located. Plaintiffs are both located in Illinois. Bart Declaration at ¶ 14. Accordingly, documents evidencing the parties' performance, any alleged breach of the Victory Agreement and any damages to Plaintiffs, would be located in Illinois. Further, the members of Hawthorne Heights reside in Ohio and they would have documents evidencing the parties' performance under the Victory Agreement and any alleged breach of the Victory Agreement. *See* Bart Declaration at ¶ 4. Further, Daniel Friedman, Hawthorne Heights' then business attorney and advisor is located in Chesterfield, Missouri and would be likely to have relevant documents concerning the parties' performance and any alleged breach of the Victory Agreement. Similarly, one of the lawyers retained by Hawthorne Heights, Rhonda Trotter, who is a member of Kaye Scholer LLP's California office, is also likely to have documents which are relevant to any alleged breach of the Victory Agreement by Hawthorne Heights. None of the documents provided by these witnesses are located in New York. Indeed, the Complaint provides that Hawthorne Heights breached the Victory Agreement by, *inter alia*, sending Victory a

15817.5

termination letter which was an express repudiation of the Victory Agreement. Bart Decl. at ¶ 2. This communication would not be found in New York; but instead, would be in files in the possession of Plaintiffs and Hawthorne Heights, and their agents.

In order to succeed on their tortious interference with contract claim, Plaintiffs will need to demonstrate, *inter alia*, that they had a reasonable expectancy of a valid business relationship with Hawthorne Heights, that the prospective business relationship never materializes, and that Plaintiffs were damaged by the alleged interference. *See Lynch v. Ford Inc. v. Ford Motor Co., Inc.*, 957 F.Supp. 142, 146 (N.D.Ill.1997). The relevant documents to support these necessary elements of their tortious interference claims would not be located in New York. Instead, any such documents would be located in Illinois, where Plaintiffs are located.

3.  Illinois is More Convenient For The Witnesses

The Northern District of Illinois, where the Illinois Hawthorne Heights Action is currently pending, is a more convenient location for the witnesses. Plaintiffs are located in Illinois. Bart Declaration at ¶ 14. Anthony Brummel, CEO of Victory and a potential witness to whether Hawthorne Heights breached the Victory Agreement, any damages allegedly suffered by Plaintiffs and Plaintiffs' business expectations, is a citizen and resident of Chicago. *See* Bart Declaration at ¶ 5. The members of Hawthorne Heights, who will be key witnesses for establishing the key elements of Plaintiffs' tortious interference claims, are citizen and residents of Ohio and have no connection to New York. *See* Bart Declaration at ¶ 4. Indeed, the convenience of Illinois for those witnesses is underscored by the fact that Hawthorne Heights chose to institute the Hawthorne Heights Action against Plaintiffs in the Northern District of Illinois. Geographically, Illinois is more convenient than New York for Mr. Friedman, who is located in Missouri, and Ms. Trotter, who is located in California. Further, since Mr. Friedman and Ms. Trotter are likely to be witnesses in the Hawthorne Heights Action in Illinois, appearing

12

as a witness for a related litigation in that same forum is likely more convenient than appearing for a new action in New York.

    4.  <u>The Forum's Familiarity With the Governing Law</u>

It is well established that "[a] federal court sitting in diversity applies the forum state's choice of law rules to decide which state's substantive law applies." *Howard v. Four Seasons Hotels*, 1997 U.S. Dist. LEXIS 2598 (S.D.N.Y. March 6, 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941)); *Ferens v. Deere Co.*, 494 U.S. 516, 523, 108 L. Ed. 2d 443, 110 S. Ct. 1274 (1990); *Continental Ins. Cos. v. Wickes Cos.*, 1991 U.S. Dist. LEXIS 12426, at *10-11 (S.D.N.Y. Sept. 6, 1991). New York's choice of law rules require the application of Illinois law to Plaintiffs' claims.

Under New York's "interest analysis" in tort cases, the law of the jurisdiction having the greatest interest in the litigation applies. *Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc.*, 241 F. Supp. 2d 246, 277 (S.D.N.Y. 2002); *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 196-97, 480 N.E.2d 679, 683, 491 N.Y.S.2d 90 (1985). To determine which jurisdiction has the greatest interest, the Court must look only to those facts or contacts that relate to the purpose of the particular laws in conflict. "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Id.* In addition, New York courts distinguish between loss-allocating and conduct-regulating rules. In the latter type of cases, the law of the locus jurisdiction generally applies. *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992); *see also Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996) ("Where the parties are domiciled in different states, the locus of the tort will almost always be determinative in cases involving conduct regulating laws."). Tortious interference with contractual relations is conduct-regulating and thus New York courts must look to the locus of the tort to determine which jurisdiction's law should apply. *See Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc.*, 241 F.

13

Supp. 2d 246, 277 (S.D.N.Y. 2002); *Altschuler v. Univ. of Pennsylvania Law School*, 1997 U.S.

Dist. LEXIS 3248, No. 95 Civ. 249, 1997 WL 129394, at *14 (S.D.N.Y. March 21, 1997).  In

tortious interference cases, the site where the plaintiff suffered damages due to the defendant's

allegedly tortious conduct determines the locus of the tort.  *Frink Am. Inc. v. Champion Mach.*

*Ltd.*, 48 F. Supp. 2d 198, 205 (N.D.N.Y. 1999).  That is because, "when 'the defendant's . . .

conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of

the wrong is considered to be the place where the last event necessary to make the actor liable

occurred.'"  *Id.* at 205 (emphasis omitted) (quoting *Schultz*, 65 N.Y.2d at 195, 491 N.Y.S.2d at

90, 480 N.E.2d at 679).  The tort of tortious interference with contract requires that the plaintiff

suffer damages, which is the last event that would render a putative tortfeasor liable. *Id.*

Here, Plaintiffs' principal place of business and state of incorporation is Illinois.  Thus,

any alleged damage to Plaintiffs would be suffered in Illinois.  Accordingly, Illinois law should

apply to Plaintiffs' tortious interference claims.  Because the District of Illinois is presumably

more familiar with Illinois law than a court sitting in New York, this factor weighs in favor of a

transfer.  *Howard v. Four Seasons Hotels*, 1997 U.S. Dist. LEXIS 2598, at * 9 (finding that the

transferee district court "is presumably more familiar with" that state's law, which weighs in

favor of transfer); *Ferens v. Deere Co.*, 494 U.S. at 530 (holding that federal courts favor

adjudication of diversity actions by a federal court that sits in the state whose substantive law

will govern the case) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947)).

### 5.  Plaintiffs' Choice of Forum Should Be Entitled Less Weight Since It Is Not Their Home Forum

This Court should give little weight to Plaintiffs' choice of forum in New York rather

than its home forum, Illinois.  Although a plaintiff's choice of forum is generally entitled to

"substantial consideration," this is not the case when plaintiff's choice of forum is not its home

forum. *See In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995). Indeed, it is well established that a

plaintiff's choice of forum is entitled to significantly less weight when it has not chosen the

forum in which it resides. *Robomatix Int'l, Inc. v. Aluminum Co. of America*, No. 92 Civ. 6281,

1993 U.S. Dist. LEXIS 7034, at *4 (S.D.N.Y. May 20, 1993) ("The weight given to the

plaintiff's choice of forum is . . . diminished where the plaintiff brings suit outside his home

forum."); *Brown*, 1996 WL 257614, at *3 (holding that a plaintiff's choice of forum is accorded

"little weight" "when a plaintiff brings suit outside his home forum"); *800-Flowers, Inc. v.

Intercontinental Flowers, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994).

Here, New York is not Plaintiffs' home forum. Plaintiffs are Illinois corporations with

their principal places of business in Illinois. Plaintiffs' decision to re-file their tortious

interference claims in New York was purely tactical and was done in bad faith. Accordingly,

this Court should not give any weight to Plaintiffs' decision to file the instant action in New

York.

In light of the foregoing factors, this Court should transfer the New York Action back to

the Northern District of Illinois, where it was originally pending.

## II.    IN THE ALTERNATIVE, THIS COURT SHOULD STAY THIS ACTION PENDING RESOLUTION OF THE ILLINOIS ACTION

In order to succeed on their tortious interference with contract claim, Victory will need to

demonstrate that Virgin has intentionally and maliciously induced a breach of contract. *See

RKI, Inc. v Grimes*, 200 F. Supp. 2d 916 (N.D. Ill. 2002). The Complaint provides that

Hawthorne Heights breached the Victory Agreement, *inter alia*, by sending Victory a

termination letter which was an express repudiation of the Victory Agreement. However, one of

the key issues remaining before the Court in the Illinois Hawthorne Heights Action is whether

Hawthorne Heights properly terminated the Victory Agreement for cause or whether Victory has

15

15817.5

breached the Victory Agreement.  The determinations of the Illinois Court as to whether

Hawthorne Heights properly terminated the Agreement and whether Victory breached the

Victory Agreement may be dispositive of the issue of whether or not Victory can demonstrate

that the Agreement has been breached.  In light of the significant impact of the decision in the

Illinois Hawthorne Heights Action on the instant proceeding, this Court should stay this action

pending resolution of the Illinois Hawthorne Heights Action.

     It is well-established that a district court may stay a litigation pursuant to its inherent

authority to effectively manage its docket.  *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*,

269 F. Supp. 2d 356, 364 (S.D.N.Y. 2003) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254-

55, 81 L. Ed. 153, 57 S. Ct. 163 (1936) ("The power to stay proceedings is incidental to the

power inherent in every court to control the disposition of the causes on its docket with economy

of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the

exercise of judgment, which must weigh competing interests and maintain an even balance."));

*Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 225 (2d Cir. 1991) (finding that the

district court's power to grant a requested stay follows from "the power inherent in every court to

control the disposition of the cases on its docket with economy of time and effort for itself, for

counsel, and for litigants."); *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 316

(2d Cir. 1998) (finding that "the District Court has broad discretion to stay proceedings as an

incident to its power to control its own docket.") (citations omitted; internal quotations omitted);

*Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., Inc.*, 339 F.2d 440, 441 (2d Cir.

1964); *FTC v. Essex Mktg. Group, Inc.*, 2006 U.S. Dist. LEXIS 73354, at * 2  (E.D.N.Y. Sept.

22, 2006) ("A federal court has inherent power to issue a stay of civil proceedings "when the

interests of justice require such action."); *see also Xerox Corp. v. 3Com Corp.*, 69 F. Supp.2d

404, 406-07 (W.D.N.Y. 1999).

15817.5

In ruling on a motion to stay, courts are guided by three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

The case of *Andrews v. Lasser Marshall, Inc.*, 1997 U.S. Dist. LEXIS 15508 (S.D.N.Y. Oct. 6, 1997) is illustrative. Therein, the plaintiff alleged that the defendant tortiously interfered with the plaintiff's Buy-Out Agreement with a third party and was responsible for a prima facie tort. The defendant moved to stay the action pending the decision in a pending arbitration between plaintiff and the third party. The court found that the pending arbitration would decide whether there was a breach of the plaintiff's Buy-Out Agreement and stayed the plaintiff's action against the defendant. Indeed, the court recognized that "[i]n these circumstances, where the result of the arbitration may substantially resolve issues in this case thereby saving the resources of the parties and the Court, where the arbitration is moving expeditiously and there is no showing of any prejudice from a brief stay to allow the arbitration to conclude, the stay of this action is warranted." *Andrews v. Lasser Marshall, Inc.*, 1997 U.S. Dist. LEXIS 15508, at *2 (S.D.N.Y. Oct. 6, 1997). *See also, Hikers Indus., Inc. v. William Stuart Indus. Ltd.*, 640 F. Supp. 175, 178 (S.D.N.Y. 1986); *Societe Nationale Pour La Recherche, Etc. v. General Tire & Rubber Co.*, 430 F. Supp. 1332, 1334 (S.D.N.Y. 1977); *Liquifuels, Inc. v. Hess Oil & Chem. Co.*, 281 F. Supp. 596, 597 (S.D.N.Y. 1968); *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991); *Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, No. 00 Civ. 4730, 2000 U.S. Dist. LEXIS 18214, at *9 (S.D.N.Y. Dec. 19, 2000) (finding a stay appropriate where "the claims in the instant action and those being adjudicated in arbitration arise out of the same series of alleged acts"); *Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg*, No. 92 Civ. 2236, 1992 U.S. Dist. LEXIS

17

14289, at *2 (S.D.N.Y. Sept. 22, 1992) ("Courts in this district have repeatedly granted stays pending arbitration where the nonarbitrable issues overlap the arbitrable issues, thus minimizing inconsistent results and conserving judicial resources.").

Here, just as in *Andrews*, a related action is pending which may substantially resolve issues in this case. The decision by the Court in the Hawthorne Heights Action on the critical overlapping issues in the instant Action, namely, a determination of the obligations of Hawthorne Heights and Plaintiffs under the Victory Agreement and the sufficiency of the parties' performance under that agreement, will undoubtedly simplify the issues before this Court. Once the Hawthorne Heights Action is resolved, this Court will have a determination as to whether or not Hawthorne Heights has breached the Victory Agreement, which is the subject of Plaintiffs' tortious interference with contract claim. Indeed, if the Court in the Hawthorne Heights Action finds that Hawthorne Heights properly terminated the Victory Agreement and that Victory is not in breach of the Victory Agreement, then Plaintiffs' tortious interference claim against Virgin must fail, as a matter of law.

Further, Plaintiffs will suffer no prejudice if the Hawthorne Heights matter is resolved before the instant New York Victory Action. Instead, Plaintiffs will benefit from avoiding duplicitous litigation. Indeed, the parties will likely seek much of the same pre-trial discovery that is being conducted in the Hawthorne Heights Action to determine whether Hawthorne Heights has breached the Victory Agreement. Such pretrial discovery will no doubt include subjecting the same witnesses to time-consuming and costly depositions and production of the same documents.

Moreover, if it chooses to proceed with the instant New York Victory Action, the Court will expose the parties to a substantial risk of inconsistent rulings on whether or not there has been a breach of the Victory Agreement.

Finally, the instant proceeding is still at a very early stage. The Hawthorne Heights Action, on the other hand, has been pending since August 2006 and the parties have already received rulings which may impact the instant Action.

Accordingly, should the Court chose not to transfer the instant action, the Court should stay the action since such a stay would significantly conserve precious judicial resources, avoid duplicitous litigation and minimize the substantial risk of inconsistent rulings.

## **CONCLUSION**

For all of the foregoing reasons, defendant Virgin Records America, Inc. respectfully requests that its motion to stay or, in the alternative, to transfer the Action to the Northern District of Illinois be granted in all respects.

Dated: New York, New York
April 17, 2008

JENNER & BLOCK LLP

By: _____
Andrew H. Bart
Carletta F. Higginson
919 Third Avenue, 37th Floor
New York, New York 10022
(212) 891-1600

*Attorneys for Defendant Virgin Records America, Inc.*

15817.5

# CERTIFICATE OF SERVICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

VICTORY RECORDS, INC., and ANOTHER           :
VICTORY, INC.,                                :
                                              :        Case No.: 08-CV-00314 (PKC)
                                              :
                  Plaintiffs,                 :
                                              :        **CERTIFICATE OF SERVICE**
         - against -                          :
                                              :
VIRGIN RECORDS AMERICA, INC.,                 :
a division of EMI MUSIC NORTH AMERICA,        :
                                              :
                  Defendant.                  :
-------------------------------------------------------------------X

 

      I, Carletta F. Higginson, do hereby certify that on this 17th day of April 2008 I caused the

within **Memorandum of Law in Support of the Motion by Defendant Virgin Records**

**America, Inc. to Transfer or, in the Alternative, Stay this Action** to be filed via the Southern

District of New York's Electronic Case Filing system and caused same to be served via U.S.

First Class mail delivery upon ***Robert S. Meloni, Esq., Meloni and McCaffrey, P.C.***, 1350

Avenue of the Americas, Suite 3100, New York, New York 10019 by having a true and correct

copy of same wrapped in a postage-paid envelope and deposited into the care and custody of the

United States Postal Service.

 

_____
Carletta F. Higginson

 

15986