**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| VICTORY RECORDS, INC., an Illinois Corporation and ANOTHER VICTORY, INC., an Illinois corporation, | ) ) ) ) | 08 Civ. 00314 (PKC) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| VIRGIN RECORDS AMERICA, INC., a California corporation, a division of EMI MUSIC NORTH AMERICA, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO THE MOTION OF DEFENDANT TO TRANSFER OR,
IN THE ALTERNATIVE, STAY THIS ACTION**

MELONI & McCAFFREY, P.C.
1350 Avenue of the Americas, Suite 3100
New York, New York 10019
(212) 957-5577

*Attorneys for Plaintiffs Victory Records, Inc.
and Another Victory, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 2

ARGUMENT ...................................................................................................... 6

POINT I

THIS ACTION IS IN THE PROPER FORUM .............................................................. 6

Standard of Review for a Section 1404 (a) Motion ................................................. 6

(1) Convenience of the Witnesses.......................................................................... 9

(2) Convenience of the Parties.............................................................................. 11

(3) Locus of Operative Facts ................................................................................ 11

(4) Location of Relevant Documents and
    Relative Ease to Access to Sources of Proof ..................................................... 12

(5) Availability of Process to Compel
    Attendance of Unwilling Witnesses .................................................................. 14

(6) Forum's Familiarity with the Governing Law ...................................................... 15

(7) Relative Financial Means of the Parties ............................................................ 16

(8) Plaintiff's Choice of Forum .............................................................................. 16

(9) Trial Efficiency and the Interests of Justice Generally.......................................... 18

POINT II

THIS ACTION SHOULD NOT BE STAYED .............................................................. 20

CONCLUSION.................................................................................................. 22

# **TABLE OF AUTHORITIES**

_**Cases**_                                                                                                          _**Pages**_

_Abovepeer, Inc. v. Recording Indust. Ass'n of America, Inc._,
   166 F.Supp.2d 655 (N.D.N.Y. 2001), _aff'd sub nom_,
   _BuddyUSA, Inc. v. Recording Industry Ass'n of America, Inc._,
   21 Fed.Appx. 52 (2d Cir. 2001) ...................................................................... 20

_Am. Alliance Ins. Co. v. Sunbeam Corp._,
   98 Civ. 4703, 1999 WL 38183 (S.D.N.Y. Jan. 28, 1999) ..................................... 7

_Anadigics, Inc. Raytheon Co._,
   903 F. Supp. 615 (S.D.N.Y. 1995) ..................................................................... 8

_Andrews v. Lasser Marshall, Inc._,
   97 Civ. 3827, 1997 WL 624986 (S.D.N.Y. Oct. 6, 1997) .................................. 20

_Bondi v. Grant Thornton Int'l_,
   04 Civ. 9771, 2006 WL 1817313 (S.D.N.Y. June 30, 2006), _aff'd sub nom_,
   _In re Parmalat_, 04 Civ. 9771, 2006 WL 2668367 (S.D.N.Y. Sept. 14, 2006) ..... 15

_Branch v. Tower Air, Inc._,
   94 Civ. 6625, 1995 WL 649935 (S.D.N.Y. Nov. 3, 1995) ............................. 9, 12

_Brown v. Dow Corning Corp._,
   93 Civ. 5510, 1996 WL 257614 (S.D.N.Y. May 15, 1996)................................ 17

_Cartier v. Micha, Inc._,
   06 Civ. 4699, 2007 WL 1187188 (S.D.N.Y. April 20, 2007)............................. 12

_Coker v. Bank of America_,
   984 F. Supp. 757 (S.D.N.Y. 1997) ................................................................. 9, 13

_Cont'l Pac. Shipping, Ltd. v. CIT Group/Equip. Fin., Inc._,
   96 Civ 2646, 1996 WL 571855 (S.D.N.Y. Oct. 7, 1996) ................................... 16

_Dwyer v. Gen Motors Corp._,
   853 F. Supp. 690 (S.D.N.Y. 1994) .................................................................. 15

_Eichner v. Dillon_,
   73 A.D.2d 431, 426 N.Y.S.2d 517 (2d Dep't 1980)............................................ 7

_Fid. Mortgage Investors v. Camelia Builders, Inc._,
   550 F.2d 47 (2d Cir. 1976), _cert denied_, 429 U.S. 1093 (1977) ......................... 18

*Gen. Elec. Capital Corp. v. Titan Aviation, LLC*,
  06 Civ.4795, 2007 WL 107752 (S.D.N.Y. Jan. 16, 2007)............................ 10, 11

*George v. Ford Motor Co.*,
  03 Civ. 7643, 2007 WL 2398806 (S.D.N.Y. Aug. 17 2007) ............................... 14

*Gerling Am. Ins. Co. v. FMC Corp.*,
  97 Civ. 6473, 1998 WL 410898 (S.D.N.Y. July 22, 1998) .................................... 7

*Gould Paper Corp. v. Gomez*,
  07 Civ. 6087, 2008 WL 113900 (S.D.N.Y. Jan. 11, 2008)................................. 6, 7

*Hikers Indus., Inc. v. William Stuart Indus.(Far East), Ltd*,
  640 F. Supp. 178 (S.D.N.Y. 1986) ...................................................................... 20

*Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*,
  06 Civ. 7672, 2007 WL 163111 (S.D.N.Y. Jan 22, 2007).........................6, 13, 15

*Ivy-Mar Co., Inc. v. Weber-Stephen Products, Co.*,
  93 Civ. 5973, 1993 WL 535166 (S.D.N.Y. Dec. 22, 1993) ................................. 19

*In re Joe DeLisi Fruit Co.*,
  11 B.R. 694 (D. Minn. 1981) .............................................................................. 18

*In re Molitor*,
  183 B.R. 547 (E.D. Ark. 1995) .......................................................................... 18

*In re Sumpter*,
  171 B.R. 835 (N.D. Ill. 1994) ............................................................................ 18

*John's Insulation, Inc. v. Siska Const. Co., Inc.*,
  671 F. Supp. 289 (S.D.N.Y 1987) ...................................................................... 20

*Kiss My Face Corp. v. Bunting*,
  02 Civ. 2645, 2003 WL 22244587 (S.D.N.Y. Sept. 30, 2003) ............................ 10

*Lipton v. The Nature Co.*,
  781 F. Supp. 1032 (S.D.N.Y. 1992), *aff'd*, 71 F.3d 464 (2d Cir. 1995)................. 7

*Liquifuels, Inc. v. Hess Oil & Chem Co.*,
  281 F. Supp. 596 (S.D.N.Y. 1968) ..................................................................... 20

*Matera v. Native Eyewear, Inc.*,
  355 F. Supp.2d 680 (E.D.N.Y. 2005) .............................................................. 6, 10

*Matter of Colonial Realty Co.*,
    134 B.R. 1017 (D. Conn.), *aff'd*, 980 F.2d 125 (2d Cir. 1991)...........................18

*Metallgesellschaft A.G. v. M/V Capitan Constante*,
    790 F.2d 280 (2d Cir. 1986).................................................................21

*Midland Walwyn Cap., Inc. v. Spear, Leeds & Kellogg*,
    92 Civ. 2236, 1992 WL 249914 (S.D.N.Y. Sept. 22, 1992)...............................21

*Motown Record Co., L.P. v. iMesh.Com, Inc.*,
    03 Civ. 7339 (PKC), 2004 WL 503720 (S.D.N.Y. Mar 12, 2004) .......................7

*Motown Record Corp. v. Mary Jane Girls, Inc.*,
    660 F. Supp. 174 (S.D.N.Y. 1987) ....................................................16

*Mut. Exp. Corp. v. Westpac Banking Corp.*,
    742 F. Supp. 161 (S.D.N.Y. 1990) ....................................................17

*Nabisco, Inc. v. Brach's Confections, Inc.*,
    00 Civ. 5875, 2000 WL 1677935 (S.D.N.Y. Nov. 6, 2000) ...............................7

*New York Typographical Union No. 6 v.*
*Printers League Section of Ass'n of Graphic Arts.*,
    89 Civ. 0769, 1989 WL 153037 (S.D.N.Y. Dec. 11, 1989) ...............................21

*Orange Chicken L.L.C. v. Nambe Mills, Inc.*,
    00 Civ. 4730, 2000 WL 1858556 (S.D.N.Y. Dec. 19, 2000)..............................21

*Orb Factory, Ltd. v. Design Science Toys, Ltd.*,
    6 F. Supp.2d 203 (S.D.N.Y. 1998) ....................................................10

*Pilates, Inc. v. Pilates Inst., Inc.*,
    891 F. Supp. 175 (S.D.N.Y. 1995) ....................................................10

*Pinto v. Doskocil*,
    91 Civ. 1518, 1991 WL 207523 (S.D.N.Y. Oct. 3, 1991) ...................................20

*Prudential Sec. Inc. v. Norcom Dev., Inc.*,
    97 Civ. 6308, 1998 WL 397889 (S.D.N.Y. July 16, 1998) ...............................15

*Robomatix Int'l, Inc. v. Aluminum Co. of Am.*,
    92 Civ. 6281, 1993 WL 183776 (S.D.N.Y. May 20, 1993)..............................17

*S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*,
    906 F. Supp. 211 (S.D.N.Y. 1995) ....................................................15

*Sierra Rutile, Ltd. v. Katz*,
    937 F.2d 743 (2d Cir. 1991)..............................................................................21

*Snow Becker Krauss P.C. v. Proyectos e Instalaciones de Desalacion, S.A.*,
    92 Civ 2644, 1992 WL 395598 (S.D.N.Y. Dec. 11, 1992) ................................11

*Societe Nationale Pour La Recherce, Etc. v. Gen. Tire & Rubber Co.*,
    430 F. Supp. 1332 (S.D.N.Y. 1977) ...................................................................20

*Sunshine Cellular v. Vanguard Cellular Systems, Inc.*,
    810 F. Supp. 486 (S.D.N.Y. 1992) ............................................................. 13, 16

*Thomas Am. Corp. v. Fitzgerald*,
    94 Civ. 0262, 1994 WL 440935 (S.D.N.Y. Aug. 11, 1994) ..............................16

*Tidewater Fin. Co. v. Williams*,
    498 F.3d 249 (4th Cir. 2007)..............................................................................18

*TSR Silicon Resources, Inc. v. Broadway Com Corp.*,
    06 Civ. 9419, 2007 WL 4457770 (S.D.N.Y. Dec. 14, 2007)..............................16

*Virgin Enter. Ltd. v. American Longevity*,
    99 Civ. 9854, 2001 WL 34142402 (S.D.N.Y. March 1, 2001)......................9, 18

*Williams v. Nathan*,
    897 F. Supp. 72 (S.D.N.Y. 1995), *aff'd*,
    101 F.3d 687 (2d Cir. 1996)................................................................................6

*800 Flowers, Inc. v. Intercontinental Flowers, Inc.*,
    860 F. Supp. 128 (S.D.N.Y. 1994) ...................................................................17

## *Statutes*

Fed. R. Civ. P. §45 ..........................................................................................................14

Fed. R. Civ. P. §45 (a) (2) ...............................................................................................14

Fed. R. Civ. P. §45 (b) (2) ...............................................................................................14

Fed. R. Civ. P. §1404(a)...........................................................................1, 6, 10, 15, 20

Plaintiffs Victory Records, Inc. and Another Victory, Inc. (collectively "Victory" or "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion of defendant Virgin Records America, Inc. ("Virgin" or "Defendant") to transfer the above-captioned action to the Northern District of Illinois pursuant to 28 U.S.C. 1404 (a), or, in the alternative, to stay this action pending the resolution of a separate action between Victory and the members of the band "Hawthorne Heights" pending in the Northern District of Illinois ("Hawthorne Heights Action").[1]

## PRELIMINARY STATEMENT

Not only does this motion defy logic – *i.e*, Defendant seeks to transfer an action *away* from its home district – but it is also a text-book example of the old bromide of "the pot calling the kettle black." Defendant spends an inordinate amount of its brief berating Victory for purportedly forum-shopping, when that is exactly what Defendant hopes to accomplish by divesting this Court of its rightful jurisdiction and sending this case to the Northern District of Illinois. Defendant desperately wants to remove this case from this Court's capable hands or stay it for an indeterminate length of time while the separate case in the Northern District of Illinois, that Defendant so heavily relies on, languishes in the quagmire of the bankruptcies of the individual members of the band Hawthorne Heights. Unfortunately for Defendant, neither the facts nor the law support its position. Defendant has not and cannot demonstrate by clear and convincing evidence that either a transfer or stay is warranted in this case.

---

[1] This memorandum shall make references to and rely upon exhibits attached to the accompanying Declaration of Robert S. Meloni dated May 2, 2008 (the "Meloni Decl."). Victory shall also make references to the Declaration of Andrew H. Bart ("Bart Decl."), and Memorandum of Law In Support Of The Motion By Defendant Virgin Records America, Inc. To Transfer Or, In The Alternative, Stay This Action ("Defendant's Memo."), both dated April 17, 2008.

## STATEMENT OF FACTS

Victory filed this action in this Court on January 14, 2008 asserting separate claims against Defendant for tortious interference with contract and tortious interference with business relations. *See* Meloni Decl., Ex. A. Victory's basis for filing in the Southern District of New York was that Defendant's offices and documents are here, Defendant's relevant witnesses are based in New York and a substantial part of the tortious conduct occurred in this district. *Id.* ¶¶3-5.

For example, virtually all of the live meetings that led to the procurement of the breach occurred in New York. *Id.*, Ex. A, ¶¶ 28, 35-47. Defendant's officers and/or senior employees, all of whom work and or reside in the New York metropolitan area, including, without limitation, Jeffrey Kempler, David Wolter, David Munns, Ivan Gavin, and/or Jason Flom, either attended those meetings, or formulated, approved, initiated and/or implemented the resulting tortious strategy in New York, including the wrongful termination of the Victory Agreement, Virgin's funding of the litigation commenced on the heels of that wrongful termination, and maliciously prevented Victory's continuance of a profitable business relationship with the band Hawthorne Heights. *See* Meloni Decl. ¶5. Even if the action were transferred to the Northern District of Illinois, Victory would be forced to depose those witnesses here in New York. All of the Defendant's documentary evidence is located in New York. One non-party witness, Victory's long-standing business lawyer Nick Ferrara, is also located in New York City. Finally, Defendant's litigation counsel and Victory's litigation counsel are based in New York. Meloni Decl. ¶6. Thus the convenience of the respective parties is not an issue.

The convenience of the non-party witnesses, the most important factor in deciding a motion to transfer, does not support Defendant's position.  Four of the key non-party witnesses – *i.e.,* the surviving members of the band Hawthorne Heights -- are residents of the state of Ohio. *See* Meloni Decl. ¶7.  The remaining key non-party witnesses – *i.e.,* the band's one time business attorney, Daniel Friedman, their former personal managers, Rick Smith and John Germinario, and their former litigation counsel Rhonda Trotter -- are residents of the states of Missouri, Michigan, New York and California, respectively. *Id*.  Even if the action were transferred to the Northern District of Illinois, these witnesses could not be compelled to appear before the Court there, whereupon at least one of those witnesses, John Germinario, could be compelled to appear before this Court. *Id.* ¶8.  Thus, any depositions of the non-party witnesses must take place in Ohio, Missouri, Michigan, New York and California, even if the action were transferred to Illinois.  The interests of the non-parties do not favor transferring this case to the Northern District of Illinois.

**The Hawthorne Heights Action**

In the summer of 2006, Hawthorne Heights, a band that has been party to a recording artist, merchandising and publishing agreement with Victory since 2003, brought an action against Victory in the Northern District of Illinois, seeking, among other things, a declaratory judgment that the band was no longer bound under that agreement (the "Victory Agreement"). *See* Meloni Decl. ¶9.

Having been dragged before the court in the Northern District of Illinois, it is true that in the fall of 2006 Victory filed a separate action against Defendant in that forum, as it did not want to be litigating in two separate forums.  Victory alleged that

Virgin had tortiously interfered with the Victory Agreement. *Id.* ¶10.  In July 2007, Victory voluntarily discontinued that action without prejudice upon Defendant's repeated representation that they had not done anything to interfere with the Victory Agreement between Victory and the band Hawthorne Heights. *Id.* ¶11.  Virtually no discovery had yet taken place in either of the actions at the time of the discontinuance of the Virgin Action.  Victory took Virgin at its word.  *Id.* ¶12.

After the dismissal of the Virgin Action, discovery in the Hawthorne Heights Action proceeded with the exchange of documents by the parties. *See* Meloni Decl. ¶13. Two key non-parties, Jeffrey Kempler, Executive Vice President of Business Affairs at Virgin, and Rick Smith, a one-time manager of Hawthorne Heights, also produced documents and were deposed in the Hawthorne Heights Action in New York.  *Id.* ¶13. However, none of the band members of Hawthorne Heights were deposed, and Dan Friedman, a key witness to the events that instigated and led up to the termination of the Victory Agreement, was also not deposed as a result the band's interminable touring schedule. *Id.* ¶14.

The documentation obtained from Jeff Kempler, Dan Friedman, Rick Smith, and others, after the dismissal of the Virgin Action did not merely contradict Virgin's representations that it had not done anything to interfere with the Victory Agreement. It also established that Virgin had been an instigator and integral part of the plan to liberate Hawthorne Heights from their contractual obligations under the Victory Agreement.  *See* Meloni Decl. ¶15.  The documents establish that beginning with meetings in New York City in March 2006 between the band's lawyer, Daniel Friedman, Mr. Kempler and David Wolter, a senior director of Virgin's Artist & Repertoire

Department, a plan was hatched whereby Hawthorne Heights would, under the direction, guidance, coordination and financial assistance of Virgin, retain the powerful national law firm Kaye Scholer, privately and publicly repudiate their contract with Victory, and then commence a high visibility lawsuit and public relations campaign in an attempt to force Victory to quickly capitulate. *Id.* Finally, the documents establish Mr. Kempler's role as the primary architect of the plan and how Virgin would creatively fund the start up costs to initiate the litigation. *Id.* ¶16. The documents also establish that other officers of Virgin were aware and/or involved with this scheme. *See* Meloni Decl. ¶¶5 and 15. It was only after obtaining this irrefutable proof, months after the voluntary dismissal of the Illinois Virgin Action *without prejudice*, that Victory filed the present action against Virgin Records America, Inc. in the Southern District of New York.

Defendant's argument that this action should be transferred to the Northern District of Illinois because that is where the Hawthorne Heights Action is "pending" fails to disclose the determinant fact that on February 29, 2008, all of the surviving members of the band Hawthorne Heights[2] filed for protection under Chapter 7 of the Bankruptcy Act in the U.S. Bankruptcy Court for the Southern District of Ohio.[3] *See* Meloni Decl. ¶18. These filings automatically stayed the Hawthorne Heights Action. *See* 11 U.S.C. 362. Counsel for Victory had been advised by the band's new counsel that it is the band's plan to, *inter alia*, reject the Victory Agreement as part of the bankruptcy proceedings, *see* 11 U.S.C. 365, leaving Victory to stand in line with the other unsecured creditors. *See* Meloni Decl. ¶19. Thus, there will be no determination by Judge Moran in the Northern District of Illinois as to whether Hawthorne Heights breached the Victory

---

[2] One member, Casey Calvert, died from a drug overdose in November 2007.
[3] Case Nos. 3-08-bk-30909 (Micah Carli), 3-08-bk-30911 (Eron Bucciarelli-Tieger), 3-08-bk-30912 (JT Woodruff) and 3-08-bk-30914 (Matt Ridenour).

Agreement. No adversary proceeding has been filed in the U.S. Bankruptcy Court concerning the Victory Agreement. Thus, there is no possibility of inconsistent rulings to trouble this Court.

This action should proceed as filed before this Court. Defendant's motion for transfer or stay of this action should be denied in its entirety.

## ARGUMENT

### POINT I

### THIS ACTION IS IN THE PROPER FORUM

In the realm of legal gamesmanship, Defendant has established its superiority with its arguments for transferring this action to the Northern District of Illinois. Unfortunately for Defendant, those shadowy arguments that appear at first blush to eloquently support its position, do not withstand the light of legal scrutiny.

**Standard of Review for a Section 1404(a) Motion**

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Transfer is not guaranteed under § 1404. *Williams v. Nathan*, 897 F. Supp. 72, 77 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 687 (2d Cir. 1996). The burden lies with Defendant to make a "clear and convincing" showing that transfer under section 1404 is proper. *Gould Paper Corp. v. Gomez,* No. 07 Civ. 6087, 2008 WL 113900, *3 (S.D.N.Y. Jan. 11, 2008). *See also Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*, 06 Civ. 7672, 2007 WL 163111, *2 (S.D.N.Y. Jan 22, 2007) ("significant burden" must be shown by "clear and convincing" proof); *Matera v. Native Eyewear, Inc.*, 355 F.

Supp.2d 680, 687 (E.D.N.Y. 2005); *Nabisco, Inc. v. Brach's Confections, Inc.,* 00 Civ. 5875, 2000 WL 1677935 (S.D.N.Y. Nov. 6, 2000); *Lipton v. The Nature Co.*, 781 F. Supp. 1032, 1036 (S.D.N.Y. 1992), *aff'd,* 71 F.3d 464 (2d Cir. 1995). The clear and convincing standard requires a finding of "high probability" and it "forbids relief whenever the evidence is loose, equivocal or contradictory." *Eichner v. Dillon,* 73 A.D.2d 431, 426 N.Y.S.2d 517 (2d Dep't 1980) (citations omitted)

A motion to transfer venue is governed in the first instance by a two-part test: (1) whether the action could have been brought in the transferee venue; and (2) whether the balance of convenience and justice favors transfer. *See Am. Alliance Ins. Co. v. Sunbeam Corp.,* 98 Civ. 4703, 1999 WL 38183, *3 (S.D.N.Y. Jan. 28, 1999); *Gerling Am. Ins. Co. v. FMC Corp.*, 97 Civ. 6473, 1998 WL 410898, *2 (S.D.N.Y. 1998).

Victory does not contest that the action could have been brought in the Northern District of Illinois. However, under no circumstances has Defendant proven that the balance of convenience and justice favors transfer of this action to that forum.

When resolving the second prong of the transfer analysis, a district court generally should disturb a plaintiff's choice of forum only if, on balance, the following nine factors clearly favor transfer: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the location of relevant documents and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the forum's familiarity with the governing law; (7) the relative financial means of the parties; (8) the weight afforded plaintiff's choice of forum; and (9) trial efficiency and the interests of justice generally. *See Gould Paper*

*Corp. v. Gomez,* No. 07 Civ. 6087, 2008 WL 113900, *2 (S.D.N.Y. Jan. 11, 2008);
*Anadigics, Inc. Raytheon Co.*, 903 F. Supp.2d 615, 617 (S.D.N.Y. 1995).

However, notwithstanding Defendant's repeated remonstrations, the possibility that Victory has suffered an adverse ruling before the proposed transferee Court does not factor in this Court's transfer analysis. *See Motown Record Co., L.P. v. iMesh.Com, Inc.*, 03 Civ. 7339 (PKC), 2004 WL 503720, *8 (S.D.N.Y. March 12, 2004) ("Defendants unabashedly point out that in the Central District of California has issued 'an unfavorable decision' to plaintiffs, but this does not strike me as cutting either way in the [transfer] analysis." (citations omitted))[4]

Finally, it is likely that the action between Hawthorne Heights and Victory may be resolved without further legal proceedings, which in itself favors a denial of Defendant's transfer motion. *See* Meloni Decl. ¶20[5]; *Branch v. Tower Air, Inc.*, 94 Civ.

---

[4] In fact, Virgin is less than candid in its assessment of Victory's success in the Hawthorne Heights Action. Victory won three key rulings, the first of which essentially derailed the essence of the band's case. The first ruling, issued on October 18, 2006 by Judge Milton Shadur of the United States District Court (sitting in temporarily for the assigned Judge James B. Moran), granted Victory's motion to dismiss in part. It struck a fatal blow to the band's and Virgin's strategy to score a quick knock out blow by seeking a ruling the Victory Agreement was "terminable at will." The Court dismissed the band's claim for declaratory judgment to the extent that it was premised upon the Victory Agreement being terminable at-will. It also dismissed claims for copyright and trademark infringement to the extent that they were based on the agreement being terminable at-will. *See Bucciarelli-Tieger, et al v. Victory Records, Inc., et al*, 488 F.Supp.2d 702, 706-07 (N.D. Ill. 2007) (referring to Judge Shadur's preliminary determinations on Victory's motion to dismiss). Judge Shadur also found, and Judge Moran reiterated in his opinion dated January 10, 2007 denying Hawthorne Heights' renewed motion to bifurcate its claims and expedite discovery, that Hawthorne Heights was obligated to satisfy their four-album commitment under the Victory Agreement ("I agree with Judge Shadur. The contract is not terminable at will, and plaintiffs do have an obligation to deliver the four records unless their performance is excused by the conduct of the defendant in material breach of contract."). In a decision dated March 1, 2007, Judge Moran dismissed the band's claims for fraud, rescission, unjust enrichment and interference with business relations. *Bucciarelli-Tieger, et al v. Victory Records, Inc., et al*, 488 F.Supp.2d 702 (N.D. Ill. 2007). In a decision dated May 16, 2007, Judge Moran stated that the band remained obligated to deliver at least a third studio album to Victory under that Victory Agreement "within a reasonable time." *Bucciarelli-Tieger, et al v. Victory Records, Inc., et al,* Slip Copy, 2007 WL 1610460 (N.D. Ill. May 16, 2007). Since the last Hawthorne Heights album delivered to Victory was delivered in December 2005, and judging either by music industry custom and usage or the past practices of the parties, the standard album cycle of 18 months was exceeded by June 2006. That should be the benchmark for what is a "reasonable time."

[5] The parties to that action have reached an agreement to resolve their dispute, which, if approved by the bankruptcy court, will result in the dismissal of the Hawthorne Heights Action.

6625, 1995 WL 649935, *4 (S.D.N.Y. Nov. 3, 1995) ("Moreover, the Court is advised that the Eastern District actions may be resolved without further proceedings. *See infra* at 17. Insofar as this action is only at the pleading stage, the Court finds that transfer would not serve the interests of justice or economy.")

As demonstrated below, Defendant has not and cannot carry its substantial burden by clear and convincing evidence and thus its motion for transfer must be denied.

(1) **The Convenience of the Witnesses**

Generally, the convenience of witnesses may be the most important factor in the transfer analysis. *See Coker v. Bank of America*, 984 F. Supp. 757, 765 (S.D.N.Y. 1997). However, this factor's significance is greatly reduced where, as here, the non-party witnesses neither reside nor work in either forum. *See Virgin Enter. Ltd. v. American Longevity*, No. 99 Civ. 9854, 2001 WL 34142402, *9 (S.D.N.Y. March 1, 2001).

The key non-party witnesses in this action shall be the surviving four band members, who live in Ohio, Daniel Friedman, who lives in Missouri, Rhonda Trotter, who lives in California, Rick Smith, who lives in Michigan and John Germinario, who lives in New York. *See* Meloni Decl. ¶7. Not one of the key non-party witnesses resides within the Northern District of Illinois. *Id.*

In addition, on a motion for transfer, the moving party must supply an affidavit that contains detailed factual statements explaining why the motion should be granted, including information on the potential principal witnesses along with a general statement as to their testimony. *See Gen. Elec. Capital Corp. v. Titan Aviation, LLC*, No. 06 Civ.4795, 2007 WL 107752, *6 (S.D.N.Y. Jan. 16, 2007); *Orb Factory, Ltd. v. Design*

*Science Toys, Ltd.*, 6 F. Supp.2d 203, 208-9 (S.D.N.Y. 1998) ("Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are insufficient basis upon which to grant a change of venue under § 1404(a)"); *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995) (holding that a party's 1404(a) motion should be denied absent a detailed list documenting potential "witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony").

Here, Defendant has failed to submit the requisite factual proffer insofar as its application is predicated on the convenience of witnesses. Andrew Bart's declaration is totally devoid of any list of potential witnesses or a general statement as to their expected testimony. *See* Bart Decl., *passim*. Moreover, this oversight cannot be remedied in Defendant's reply papers. *See Gen. Elec. Capital Corp.*, 2007 WL 107752 at *7; *Matera v. Native Eyewear, Inc.*, 355 F. Supp.2d 680, 682-3 (E.D.N.Y. 2005) (denying motion to transfer because the only affidavits were attached to reply papers which the court did not consider).

Defendant has thus failed to satisfy its burden of demonstrating precisely which witnesses will be inconvenienced absent transfer, and, as a result, this factor weighs against transfer. *See Kiss My Face Corp. v. Bunting*, 02 Civ. 2645, 2003 WL 22244587 (S.D.N.Y. Sept. 30, 2003); *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995).

## (2) The Convenience of the Parties

Defendant cannot argue in good faith that the Southern District of New York is the less convenient forum for the parties.  Mr. Bart's statement in his Declaration that Victory has "no connection to this forum" is totally unsupported and overlooks the fact that Victory's long-time business lawyer and litigation counsel are based in New York and that a copy of Victory's relevant business records produced during discovery in the Northern District of Illinois action are kept in the New York counsel's office.  *Compare* Bart Decl. ¶ 14 *with* Meloni Decl. ¶¶6-8.  Moreover, since Defendant does business in this district, it cannot argue that it would be substantially inconvenienced by litigating here.  *See Sunshine Cellular v. Vanguard Cellular Sys., Inc.*, 810 F. Supp. 486, 500 (S.D.N.Y. 1992).  Indeed, even if the action were transferred to the Northern District of Illinois, Victory would be forced to depose defendant's corporate officers here in New York.  *See e.g., Snow Becker Krauss P.C. v. Provectos e Instaciones de Desalacion, S.A.*, 92 Civ 2644, 1992 WL 395598, *3 S.D.N.Y. Dec. 11, 1992) (Where a corporation is involved as a defendant to the litigation, there is a general presumption in favor of conducting depositions of a corporation in its principal place of business).  Finally, as with the convenience of the witnesses' factor, Defendant's total lack of factual proffer in its moving papers concerning the convenience of the parties equally dooms any argument Defendant could make on this issue.  *See Gen. Elec. Capital Corp.,* 2007 WL 107752 at *7.  Defendant has failed to carry its heavy burden on this factor.

**(3) <u>Locus of Operative Facts</u>**

One of the principal allegations in the complaint is that the pivotal meetings with Virgin's officers and employees occurred in New York.  *See* Meloni Decl., ¶4 and Ex A ¶28.  The complaint also alleges that New York is where the Virgin officers and

employees hatched, developed and financed the scheme leading up to Hawthorne Heights' termination of the Victory Agreement. *Id.*, ¶35-47.  Defendant does not even address this factor, and thus cannot carry its burden to show by clear and convincing evidence that it weighs in favor of transfer.  *See Cartier v. Micha, Inc.*, 06 Civ. 4699, 2007 WL 1187188, *6 (S.D.N.Y. April 20, 2007).

**(4)  Location of Relevant Documents and<br>      Relative Ease of Access to Sources of Proof**

      Defendant's argument with respect to this factor is specious.  To begin with, a copy of all of the documents produced by Victory during the Illinois action are sitting in New York Counsel's offices and can be readily produced to Defendant here.  *See* Meloni Decl., ¶15.  All of the documents produced in the Illinois action by the band Hawthorne Heights, their business attorney, Daniel Friedman, and their manager, Rick Smith, are also in Victory's New York counsel's office.  *Id.*

      Indeed, in one case where a Court denied a defendant's motion for transfer, it extolled the virtues of the economies provided by a situation like the one before this Court, where the document discovery was substantially completed in the proposed transferee forum:

> The Court notes, however, that the benefits of consolidated discovery may be obtained without transfer, at least to the extent that responsive discovery materials have already been collected, prepared, and made part of the public record in the Eastern District. The Court would urge the parties to this action to make efforts to avoid duplicative discovery proceedings by using those materials where they are relevant.

*Branch v. Tower Air, Inc.*, 94 Civ. 6625, 1995 WL 649935, *4 (S.D.N.Y. Nov. 3, 1995).

      In any event, the location of records is not a compelling consideration where, as here, the records are easily portable.  *See Coker v. Bank of America*, 984 F. Supp. 757,

766 (S.D.N.Y. 1997) ("In today's era of photocopying, fax machines and Federal Express," the location of documents factor is neutral).  To the extent there may be other documents required from the non-parties, including the non-party witness, Rhonda Trotter, they can be readily subpoenaed (see below), as would be the case even if this Court were to grant the transfer to the Northern District of Illinois.  Finally, and most importantly, all of Defendant's relevant documents that have not been produced in the Northern Illinois action are located in this forum.

Even if Defendant could make this an issue, it has failed to carry its burden. Access to documents and other proof is not a persuasive factor in favor of transfer without proof that documents are particularly bulky or difficult to transport, or proof that it is somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to bring its evidence to the proposed transferee Court.  *See Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*, 06 Civ. 7672, 2007 WL 163111, *3 (S.D.N.Y. Jan 22, 2007); *Sunshine Cellular v. Vanguard Cellular Systems, Inc.*, 810 F. Supp. 486, 500 (S.D.N.Y. 1992) ("Defendant has failed to identify a single document it would require that is bulky or difficult to transport.").  No such showing has or can be made in this case.  Defendant cannot satisfy its obligation to show by clear and convincing proof that this factor weighs heavily in favor of the proposed transfer.

**(5) <u>Availability of Process to Compel Attendance of Unwilling Witnesses</u>**

This factor cannot weigh in favor of Defendant's motion to transfer.  Most of the important non-party witnesses, the individual band members, Eron Bucciarelli-Tieger Micah Carli, Matt Ridenour, and JT Woodruff, live in Ohio, the band's lawyer, Daniel Friedman, lives in Missouri, and one of the managers, Rick Smith, lives in Michigan, and

thus are equally unsusceptible to the subpoena power of either the Northern District of Illinois or New York. Meloni Decl. ¶8. The other important non-party witness, John Germinario, who was manager during the most relevant time period – *i.e.*, 2005--2006, and Nicolas Ferrara, who is Victory's long-standing business lawyer, live in the New York metropolitan area and thus is subject to this Court's subpoena power. *Id.* ¶8. Rule 45 provides that "[a] subpoena must issue as follows: (A) for attendance at a trial or hearing, from the court for the district where the trial or hearing is to be held; [and] (B) for attendance at a deposition, from the court for the district where the deposition is to be taken . . ." Fed. R. Civ. P. 45(a)(2). Rule 45 goes on to provide that a subpoena may only be served (absent qualifications not relevant here) "at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, [or] trial . . . specified in the subpoena." Fed. R. Civ. P. 45(b)(2). *See generally, George v. Ford Motor Co.*, 03 Civ. 7643, 2007 WL 2398806 (S.D.N.Y. Aug. 17 2007). Thus, no matter where this case is filed, both parties will be forced to avail themselves of the subpoena powers of the relevant federal districts in which the non-party witnesses reside. Defendant has not and cannot sustain its heavy burden to establish by clear and convincing proof that this factor weighs decisively in favor of the transfer.

**(6) Forum's Familiarity with the Governing Law**

Assuming for purposes of this motion only that Defendant is correct that Illinois law will govern Victory's tortious interference with contract and tortious interference with business relations claims, that factor still does not weigh in favor of the transfer. In a 1404(a) motion to transfer, the "governing law" factor is to be accorded little weight on

a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states. *See Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*, 06 Civ. 7672, 2007 WL 163111, *3 (S.D.N.Y. Jan 22, 2007); *Prudential Sec. Inc. v. Norcom Dev., Inc.*, 97 Civ. 6308, 1998 WL 397889, *6 (S.D.N.Y. July 16, 1998) ("this Court has routinely held that the "governing law" factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states); *S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 215-16 (S.D.N.Y. 1995) ("[E]ven if California law governs this dispute, the legal issues involve relatively unexceptional questions of contract and fraud. If New York's choice of law rules provide that California law is the appropriate law to apply, then a New York court will be capable of applying it."); *Dwyer v. Gen Motors Corp.*, 853 F. Supp. 690, 694 (S.D.N.Y. 1994) ("The fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer."). Indeed, this Court regularly applies Illinois law to the issues before it. *See e.g., Bondi v. Grant Thornton Int'l*, 04 Civ. 9771, 2006 WL 1817313, *2 (S.D.N.Y. June 30, 2006) ("Thus, because the Northern District of Illinois would have applied Illinois law, Illinois state law applies here, including Illinois choice-of-law rules."), *aff'd sub nom, In re Parmalat*, 04 Civ. 9771, 2006 WL 2668367 (S.D.N.Y. Sept. 14, 2006); *TSR Silicon Resources, Inc. v. Broadway Com Corp.*, 06 Civ. 9419, 2007 WL 4457770 (S.D.N.Y. Dec. 14, 2007) ("Accordingly, we apply Illinois law to the preliminary question of whether the parties' sales contract included a forum selection clause."). Defendant has not carried its heavy burden of demonstrating that this factor weighs decisively in favor of transfer by clear and convincing evidence.

**(7) Relative Financial Means of the Parties**

While the relative means of the parties is a factor in considering a motion to transfer, it has "rarely been a dispositive reason to grant or deny a transfer motion." *Thomas Am. Corp. v. Fitzgerald*, 94 Civ. 0262, 1994 WL 440935, *5 (S.D.N.Y. Aug. 11, 1994). Defendant craftily avoids addressing this issue and rightly so. Virgin Records is owned by EMI, the third largest music company in the world. *See* http://www.virginrecords.com/home/aboutus.html. It has more than adequate financial means to litigate this action in the district where its offices are located. This factor does not weigh decisively in favor of the transfer.

**(8) Weight Afforded Plaintiff's Choice of Forum**

Defendant's argument that the importance in Victory's choice of forum is somehow diminished because Victory does not reside in New York, ignores the cases in this district that hold that even where the plaintiff is not a resident of the chosen forum, its choice is still entitled to "significant weight." *See Sunshine Cellular v. Vanguard Cellular Sys., Inc.*, 810 F. Supp. 486, 500 (S.D.N.Y. 1992); *Motown Record Corp. v. Mary Jane Girls, Inc.*, 660 F. Supp. 174, 175 (S.D.N.Y. 1987). This is all the more true when the defendant resides in the original forum. *Cf, Cont'l Pac. Shipping, Ltd. v. CIT Group/Equip. Fin., Inc.,* 96 Civ 2646, 1996 WL 571855, *7 (S.D.N.Y. Oct. 7, 1996) (in the context of *forum non conveniens*, "the presumption in favor of the plaintiff's choice of forum is particularly strong if the defendant resides in the chosen forum."); *Mut. Exp. Corp. v. Westpac Banking Corp.*, 742 F. Supp. 161, 163 (S.D.N.Y. 1990) (under *forum non conveniens* analysis, fact that "plaintiff has chosen a forum in which the defendant

maintains a substantial presence" "weigh[ed] in favor of deferring to plaintiff's choice of forum").

Moreover, the cases Defendant relies upon are all distinguishable, because in each of those cases, the moving defendant did not reside in the Southern District of New York where plaintiff had filed its action. *See Robomatix Int'l, Inc. v. Aluminum Co. of Am.*, 92 Civ. 6281, 1993 WL 183776 (S.D.N.Y. May 20, 1993) (plaintiff was Michigan resident and defendant resided in Pennsylvania, the proposed transferee forum); *800 Flowers, Inc. v. Intercontinental Flowers, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994) (case decided under first-filed rule, plaintiff was a Texas resident and defendant resided in Florida, the proposed transferee forum, where defendant had first-filed an action against plaintiff); *Brown v. Dow Corning Corp.*, 93 Civ. 5510, 1996 WL 257614 (S.D.N.Y. May 15, 1996) (plaintiff was resident of Connecticut and none of the defendants were residents of New York). Indeed, counsel has not been able to find a case where defendant sued in its home district ever made a motion to transfer it to a foreign jurisdiction. Defendant has not carried its heavy burden of demonstrating that this factor weighs decisively in favor of transfer by clear and convincing evidence.

**(9) Trial Efficiency and the Interests of Justice Generally**

This factor "relates primarily to issues of judicial economy." *Virgin Enter. Ltd. v. American Longevity*, No. 99 Civ. 9854, 2001 WL 34142402, *12 (S.D.N.Y. March 1, 2001). Defendant's entire argument on this factor hinges on the purported existence of an active lawsuit proceeding between Hawthorne Heights and Victory in the Northern District of Illinois. However, Defendant has not been fully forthcoming on this issue. To begin with, despite what does or does not appear on the Northern Illinois docket sheet,

Defendant cannot deny that each of the individual band members has filed for bankruptcy under Chapter 7 of the Bankruptcy Act. *See* Meloni Decl. ¶¶18-19 and Ex. B.

The filing of the Chapter 7 proceeding triggers the "automatic stay" under 11 U.S.C. § 362 (a), notwithstanding lack of actual notice of commencement of bankruptcy proceedings. *In re Sumpter,* 171 B.R. 835, 842 (N.D. Ill. 1994). *See also Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 252 (4th Cir. 2007); *In re Molitor*, 183 B.R. 547 (E.D. Ark. 1995) (automatic stay is mandated by statute and effective upon filing of bankruptcy petition without necessity of entry of court order); *Matter of Colonial Realty Co.*, 134 B.R. 1017 (D. Conn.), *aff'd*, 980 F.2d 125 (2d Cir. 1991) (automatic stay in Chapter 7 case became effective automatically and immediately upon filing of bankruptcy petition). Upon the filing of bankruptcy petition, all legal actions being taken or to be taken against debtor are halted, no new lawsuits can be commenced and ongoing proceedings of judicial or quasi-judicial nature are halted. *In re Joe DeLisi Fruit Co.*, 11 B.R. 694 (D. Minn. 1981). Formal notice of the imposition of the automatic stay is not required if the parties have actual notice. *See Fid. Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 52 (2d Cir. 1976), *cert denied*, 429 U.S. 1093 (1977). Thus, upon learning of the bankruptcy filings Victory was bound by the automatic stay with respect to the Illinois action.

Thus, the fact that the docket in the Illinois action fails to bear a notation to the existence or effect of the automatic stay has no effect on the automatic application of the stay. It is not enough for Defendant to argue that "there are no facts contained on the docket sheet" to support Victory's claim of the automatic stay, or that "whether the Hawthorne Heights Action will be removed to federal bankruptcy court and proceed

before the bankruptcy court as an adversary proceeding is entirely unclear." *See* Defendant's Memo. p. 6 n. 1. In fact, Defendant's latter admission that the future of the Northern Illinois action is "entirely unclear" undercuts any argument that this factor supports the proposed transfer. Finally, assuming that the bankruptcy trustees and bankruptcy court approve the agreement by the parties to the Hawthorne Heights Action to resolve their dispute, then the Hawthorne Heights Action will be dismissed in the relatively near future. It remains Defendant's heavy burden to demonstrate by clear and convincing evidence that the Illinois action has not been stayed, that the case shall proceed to a legal conclusion expeditiously and that there truly exists the possibility that Judge Moran of the Northern District of Illinois will render a decision that could be inconsistent with a decision by this Court. Defendant has not carried its burden on this final factor.

As demonstrated above, Defendant has failed to carry its substantial burden by clear and convincing evidence that the nine factors clearly favor the transfer it seeks. As a result, its motion to transfer must be denied.

## POINT II

### THIS ACTION SHOULD NOT BE STAYED

For the same reasons Defendant's transfer argument fails, its argument requesting, in the alternative, a stay of this action should also be denied. As with a motion for transfer, the movant bears the burden of demonstrating the wisdom and justice of a stay. *John's Insulation, Inc. v. Siska Const. Co., Inc.*, 671 F. Supp. 289, 297 (S.D.N.Y 1987). "The same factors that apply to a §1404 (a) motion to transfer are of significance in

resolving a motion to stay a competing action." *Pinto v. Doskocil*, 91 Civ. 1518, 1991 WL 207523, *10 (S.D.N.Y. Oct. 3, 1991). *See also Ivy-Mar Co., Inc. v. Weber-Stephen Products, Co.*, 93 Civ. 5973 1993 WL 535166, *2 (S.D.N.Y. Dec. 22, 1993) ("'Essentially the same factors that are of significance on a motion to stay a "second filed" action come into play on a motion to transfer under [28 U.S.C.] section 1404(a).); *Abovepeer, Inc. v. Recording Indust. Ass'n of America, Inc.*, 166 F.Supp.2d 655, 658 n.2 (N.D.N.Y. 2001) (same), *aff'd sub nom, BuddyUSA, Inc. v. Recording Industry Ass'n of America, Inc.*, 21 Fed.Appx. 52 (2d Cir. 2001)

This case is clearly distinguishable from Defendant's illustrative case, *Andrews v. Lasser Marshall, Inc.*, 97 Civ. 3827, 1997 WL 624986 (S.D.N.Y. Oct. 6, 1997). In that case, there was no contest that the proceeding arbitration that would resolve the underlying issue as to whether there was a breach of the agreement, was "moving expeditiously" and there was no showing of any prejudice from a "brief stay" required to allow the arbitration to conclude. 1997 WL 624986 at *1. *See also Hikers Indus., Inc. v. William Stuart Indus.(Far East), Ltd*, 640 F. Supp. 178 (S.D.N.Y. 1986) (stay while underlying arbitration proceeded); *Societe Nationale Pour La Recherce, Etc. v. Gen. Tire & Rubber Co.*, 430 F. Supp. 1332 (S.D.N.Y. 1977) (same); *Liquifuels, Inc. v. Hess Oil & Chem Co.*, 281 F. Supp. 596 (S.D.N.Y. 1968)(same); *Sierra Rutile, Ltd. v. Katz*, 937 F.2d 743 (2d Cir. 1991)(same); *Orange Chicken L.L.C. v. Nambe Mills, Inc.*, 00 Civ. 4730, 2000 WL 1858556 (S.D.N.Y. Dec. 19, 2000)(same); *Midland Walwyn Cap., Inc. v. Spear, Leeds & Kellogg*, 92 Civ. 2236, 1992 WL 249914 (S.D.N.Y. Sept. 22, 1992)(same). Indeed, courts recognize that the distinctive feature of arbitration is that it is an expedited proceeding that avoids the usual complications of litigation. *See New York Typographical Union No. 6 v. Printers League*

*Section of Ass'n of Graphic Arts.*, 89 CIV. 0769, 1989 WL 153037, *3 (S.D.N.Y. Dec. 11, 1989); *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 282 (2d Cir. 1986) (We have held that "[t]he purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes".)

Here, we don't have the streamlined process of an arbitration hurtling forward to resolve the underlying issues, we have a civil litigation in another district that has come to a standstill as a result of the bankruptcies of the members of Hawthorne Heights, the plaintiffs in that action. The band is not going to push to resolve that case anytime soon. Moreover, Victory is barred by the automatic stay that resulted from the bankruptcies from prosecuting its counterclaims against Hawthorne Heights, thereby establishing that the band breached the Victory Agreement. Finally, it is likely that the Hawthorne Heights Action shall be dismissed in the near future, barring the resolution of any issues that may impact the claims asserted in this action.

Instead of staying this action, Victory can build upon the substantial document production already completed in the Hawthorne Heights Action and proceed on an expedited basis before this Court to establish that Hawthorne Heights breached the Victory Agreement when it terminated it without cause and refused to perform as required there under, and that the band did so as a direct result of the substantial intent, support and efforts of Virgin.

Defendants arguments have all been proven wanting. In particular, Defendant's argument's total reliance on the premise that the Illinois action shall continue to final resolution expeditiously dooms its position on the stay motion. Defendant has not and cannot establish that the Hawthorne Heights Action can or will continue to a relatively

expedited conclusion before the action in this Court can do so. Defendant's motion for a stay must be denied.

## <u>CONCLUSION</u>

For the reasons set forth herein, this Court should deny Defendant's motion in all respects, together with such other and further relief as this Court deems just and proper.

Dated:   May 2, 2008
       New York, New York

MELONI & MCCAFFREY, P.C.

By: _____
     Robert S. Meloni (RM 8087)
     Thomas P. McCaffrey (TPM 4057)

1350 Avenue of the Americas - Suite 3100
New York, New York 10019
Tel: (212) 957-5577

*Attorneys for Plaintiffs Victory Records, Inc.*
*and Another Victory, Inc.*