UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VICTORY RECORDS, INC., and ANOTHER                  :
VICTORY, INC.,                                      :
                                                    :        Case No.: 08-CV-00314 (PKC)
                                                    :
                    Plaintiffs,                     :
                                                    :
        - against -                                 :
                                                    :
VIRGIN RECORDS AMERICA, INC.,                       :
a division of EMI MUSIC NORTH AMERICA,              :
                                                    :
                    Defendant.                      :
-------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE MOTION BY DEFENDANT VIRGIN RECORDS AMERICA, INC.
<u>TO TRANSFER OR, IN THE ALTERNATIVE, STAY THIS ACTION</u>**

17400.5

## **TABLE OF CONTENTS**

TABLE OF CONTENTS .......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 3

    I.   THIS COURT SHOULD TRANSFER THIS ACTION TO THE
        NORTHERN DISTRICT OF ILLINOIS ............................................................................ 3

        A. Virgin Has Clearly Established that Trial Efficiency and the
            Interests of Justice Weigh Heavily in Favor of Transfer .............................................. 3

        B. Virgin Has Clearly Established that Transfer Would Serve
            The Interests of Convenience and Fairness ................................................................. 6

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*800-Flowers, Inc. v. Intercontinental Flowers, Inc.,*
   860 F. Supp. 128 (S.D.N.Y. 1994) ........................................................................ 8

*American Telephone & Telegraph Co. v. MCI Communications Corp.,*
   736 F.Supp. 1294 (D.N.J. 1990) ........................................................................... 5

*Berg v. First American Bankshares, Inc.,*
   576 F.Supp. 1239 (S.D.N.Y.1983) ........................................................................ 4

*Board of Trustees,*
   702 F.Supp. 1253 (E.D.Va 1988) .......................................................................... 4

*Brown v. DOW Corning Corp,*
   1996 WL 257614 (S.D.N.Y, May 15, 1996) ......................................................... 8

*Capitol Cabinet Corp. v. Interior Dynamics, Ltd.,*
   541 F.Supp. 588 (S.D.N.Y. 1982) ........................................................................ 5

*Continental Pack. Shipping, Ltd. CIT/Equip. Fin., Inc.,*
   1996 WL 571855 (S.D.N.Y. Oct. 7, 1996) ............................................................ 9

*Dahl v. HEM Pharmaceuticals Corp.,*
   867 F.Supp. 194 (S.D.N.Y. 1994) ..................................................................... 5, 6

*De Jesus v. National R.R. Passenger Corp.,*
   725 F.Supp. 207 (S.D.N.Y.1989) .......................................................................... 9

*Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd.,*
   645 F.Supp. 89 (E.D.N.Y.1986) ............................................................................ 4

*Funke v. Life Financial Corp.,*
   2003 WL 194204 (S.D.N.Y. Jan. 28, 2003) .......................................................... 9

*George A. Fuller Co. v. Chicago College of Osteopathic Medicine,*
   719 F.2d 1326 (7th Cir.1983) ................................................................................ 7

*Kiss My Face Corp. v. Bunting,*
   2003 WL 22244587 (S.D.N.Y. Sept. 30, 2003)..................................................... 8

*Lynch v. Ford Inc. v. Ford Motor Co., Inc.,*
   957 F.Supp. 142 (N.D.Ill.1997) ............................................................................ 8

*Mikkilineni v. Gibson-Thomas Engineering Co.,*
   2003 WL 1846047 (D.D.C Mar. 31, 2003)........................................................... 10

*Motown Record Corp. v. Mary Jane Girls, Inc.,*
    660 F.Supp. 174 (S.D.N.Y. 1987) ........................................................................ 9

*Mutual Express Corp. v. Westpac Banking Corp.,*
    742 F. Supp. 161 (S.D.N.Y. 1990) ...................................................................... 9

*Nieves v. American Airlines,*
    700 F. Supp. 769 (S.D.N.Y. 1988) ...................................................................... 5

*Professional Managers' Association v. United States,*
    761 F.2d 740 (D.C.Cir.1985) ............................................................................. 10

*Robomatix Inernational, Inc. v. Aluminum Co. of America,*
    1993 U.S. Dist. LEXIS 7034 (S.D.N.Y. May 20, 1993) ..................................... 8

*Schneider v. Sears,*
    265 F.Supp. 257 (S.D.N.Y.1967) ....................................................................... 4

*Sunshine Cellular v. Vanguard Cellular Sys., Inc.,*
    810 F.Supp. 486 (S.D.N.Y. 1992) ...................................................................... 9

*Sweetheart Plastics, Inc. v. Illinois Tool Works,*
    267 F.Supp. 938 (S.D.N.Y.1967) ....................................................................... 5

**Statutes**

Federal Practice and Procedure § 3854 ...................................................................... 5

**Other Authorities**

17 James Wm. Moore et al., Moore's Federal Practice § 111.13 (3d ed.2004) ............................ 4

17400.5

Defendant Virgin Records America, Inc. ("Virgin") respectfully submits this reply memorandum in further support of its motion (1) to transfer the above-captioned action (the "New York Victory Action") commenced by plaintiffs Victory Records, Inc. (individually, "Victory") and Another Victory, Inc. (collectively, "Plaintiffs") to the Northern District of Illinois where a related action is pending, pursuant to 28 U.S.C. § 1404(a); or, in the alternative (2) to stay the New York Victory Action pending resolution of the related action in the Northern District of Illinois.

## PRELIMINARY STATEMENT[1]

The most striking fact about Plaintiffs' opposition to the instant motion (the "Opposition") is that they do not dispute that they have repeatedly engaged in forum shopping. Plaintiffs do not contest that they originally filed an identical action against Virgin in the Northern District of Illinois (the Illinois Victory Action) -- the district in which Plaintiffs are located and incorporated.  Plaintiffs do not address the fact that Victory moved to consolidate the Hawthorne Heights Action and the Illinois Victory Action as related cases or that the District Court in the Northern District of Illinois determined that the two actions were related cases that arise from the same set of facts and should proceed before the same judge.  Nor do they dispute that they dismissed the Illinois Victory Action and, six months later, initiated a virtually identical claim against Virgin in this Court (the New York Victory Action) without mention of the related action that is pending in the Northern District of Illinois.  Instead, the Opposition ignores all these facts and argues a separate issue -- whether, in the absence of forum shopping, New York

---

[1] Capitalized terms used herein and not defined shall have the same meaning given to them in the Virgin's Memorandum of Law in Support of its Motion To Transfer Or, In The Alternative, Stay The Action (the "Moving Memorandum").

might be a proper forum for this action. However, this motion arises from, and must be evaluated in relation to, Victory's procedural gamesmanship.

The centerpiece of Plaintiffs' Opposition is their repeated assertion that the Hawthorne Heights Action is not an active litigation - that the members of Hawthorne Heights have filed for bankruptcy protection and that such filings have automatically stayed the Hawthorne Heights Action. However, critical facts known by Plaintiffs but not disclosed to this Court in the Opposition prove that this argument is baseless. According to the docket sheet in the Hawthorne Heights Action, that case is still active.[2] Indeed, a status conference was held on April 22, 2008 (almost three months after Hawthorne Heights filed for bankruptcy) before Magistrate Judge Denlow to determine a discovery dispute between Hawthorne Heights and Victory. The docket entry reflects Judge Denlow's direction that Hawthorne Heights is required to produce information demonstrating whether or not they own or control the website "www.hawthorneheights.com" on or by May 20, 2008. If they do, then Hawthorne Heights is required to comply with Victory's request for electronically stored information in connection therewith on or before June 4, 2008. Obviously, the Hawthorne Heights Action is still active. More troubling is the fact that Plaintiffs know that the Hawthorne Heights Action is still active -- they were at the April 22 conference. Indeed, Victory was seeking relief from the Court in the Hawthorne Heights Action at the same time it is representing to this Court that the Hawthorne Heights Action is stayed. Plaintiffs' failure to disclose to this Court that the Hawthorne Heights Action is active and on-going and that they appeared for a status conference seeking affirmative relief in the Hawthorne Heights Action just nine days before they submitted the Opposition is at best disingenuous and at worse, an intentional attempt to mislead this Court.

---

[2] A true and correct copy of the docket sheet in the Hawthorne Heights Action is attached as Exhibit A to the accompanying Declaration of Andrew H. Bart dated May 12, 2008.

2

Ultimately, we return to the question asked in the Moving Memorandum. Why are Plaintiffs fighting so fiercely to resist the transfer of the instant action back to their own home district, where the instant action was initially brought and where the related Hawthorne Heights Action is clearly still pending? There is only one possible answer. Plaintiffs desperately want to get this case away from Judge Moran. Plaintiffs do not address this fact and certainly never deny it. Yet, that is what this fight is all about. Victory's gamesmanship in this matter has been shocking and should not be condoned or rewarded by this Court.

## ARGUMENT

### I.     THIS COURT SHOULD TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF ILLINOIS

#### A.  Virgin Has Clearly Established that Trial Efficiency and the Interests of Justice Weigh Heavily in Favor of Transfer

There is no question that this action could have been brought in the Northern District of Illinois, where Plaintiffs are located and conduct business. Indeed, Plaintiffs expressly concede this point in the Opposition. Moreover, the Opposition offers nothing to rebut the fact that trial efficiency and the interests of justice weigh squarely in favor of transferring the instant New York Victory Action to the Northern District of Illinois, where the Illinois Hawthorne Action is still active. The claims in these two cases have already been judicially determined to be related such that they should proceed before the same judge. The only reason they are not before the same judge is because of Plaintiffs' blatant forum-shopping -- part of the gamesmanship that has characterized Plaintiffs' actions since the filing of the Illinois Victory Action.

As noted in the Moving Memorandum, Plaintiffs filed the Illinois Victory Action as an independent action without disclosing the existence of the Hawthorne Heights Action. It is now clear that they did this to give themselves a choice of which judge would hear this action. After

17400.5

an initial favorable ruling from Judge Moran, they decided he was the judge they wanted to decide their claims against Virgin and moved to consolidate the two actions. The gamesmanship behind this decision is evident since Victory was the party responsible for the fact that there were two separate actions in the first place and since all the material facts cited by Plaintiffs in favor of consolidation were known to them at the time they filed the Illinois Victory Action as a separate action. The Court granted Victory's motion to consolidate finding that Plaintiffs' tortious interference claims against Virgin arise from the same set of facts that are at issue in the Hawthorne Heights Action and should be before the same judge. Subsequently, after receiving unfavorable decisions from the Court in the Hawthorne Heights Action, Plaintiffs decided to dismiss their tortious interference claims against Virgin and to re-file these same claims against Virgin in New York as an entirely new case -- without any reference to the related action that is pending in Illinois.

It is well established that the interests of justice weigh heavily in favor of transfer when related actions are pending in the transferee forum. *See, e.g. Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd.*, 645 F.Supp. 89, 92 (E.D.N.Y.1986) ("The pendency of a related case in the proposed transferee forum is a powerful reason to grant a motion for a change of venue"); *Schneider v. Sears*, 265 F.Supp. 257, 266 (S.D.N.Y.1967); *Board of Trustees*, 702 F.Supp. 1253, 1260 n. 24 (E.D.Va 1988) (collecting cases); 17 James Wm. Moore et al., Moore's Federal Practice § 111.13[1][o] (3d ed.2004) (collecting cases). This is particularly so when the "two cases are intimately related and 'hinge upon the same factual nucleus.'" *Berg v. First American Bankshares, Inc.*, 576 F.Supp. 1239, 1243 (S.D.N.Y.1983) (citation omitted).

Indeed, courts have held that "the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different

direction." *Dahl v. HEM Pharmaceuticals Corp.* 867 F.Supp. 194, 196 (S.D.N.Y. 1994) (quoting

Federal Practice and Procedure § 3854 at 439-440); *see also Capitol Cabinet Corp. v. Interior

Dynamics, Ltd.*, 541 F.Supp. 588, 591 (S.D.N.Y. 1982); *American Tel. & Tel. Co. v. MCI

Communications Corp.*, 736 F.Supp. 1294 (D.N.J. 1990).

   Here, it has already been judicially determined that the earlier Illinois Victory Action,

which is identical to the instant action, was related to the Hawthorne Heights Action and should

proceed before the same judge. Indeed, the Northern District of Illinois found that "[b]oth cases

arise out of the same fight, and having one Judge handling both may likely result in a substantial

saving of judicial time and effort." Moreover, the Northern District of Illinois is already fully

familiar with the Victory Agreement and the parties' performance thereunder. As discussed in

more detail in Virgin's moving papers, Judge Moran has already entered several substantive

decisions in the Hawthorne Heights Action. Indeed, Plaintiffs' discussion of some of those

decisions in footnote 4 of the Opposition merely highlights the familiarity that the Northern

District of Illinois already has with the key issues in this litigation. The retention of jurisdiction

over the instant action by this Court would cause needless waste of judicial resources. *See

Sweetheart Plastics, Inc. v. Illinois Tool Works*, 267 F.Supp. 938, 944 (S.D.N.Y.1967) (finding

that the familiarity of transferee judge with the facts at issue weighs in favor of transfer); *Nieves

v. Am. Airlines*, 700 F. Supp. 769, 773 (S.D.N.Y. 1988).

   Further, Plaintiffs' representations that the Hawthorne Heights Action has "come to a

standstill as a result of the bankruptcies of the members of Hawthorne Heights" (Opposition at p.

21) are demonstrably false and plainly disingenuous. The docket sheet in the Hawthorne Heights

Action reflects that a status conference took place in that action a mere two and a half weeks ago.

The docket sheet clearly indicates that the action is still pending and has been active during the

17400.5

pendency of the instant motion.  The Court has continued entering orders and the parties have

both appeared and continued to litigate substantive issues in the Hawthorne Heights Action.

Moreover, even if the related Hawthorne Heights Action was no longer pending (though,

clearly, it is) or is close to settling (though there is no competent evidence to show that it is),[3]

this Court should still transfer the action in the interests of justice.  In *Dahl v. HEM*

*Pharmaceuticals Corp*, 867 F.Supp. 194, 196-97, this Court rejected plaintiff's argument that

transfer was not appropriate since there was no longer an action pending in the proposed

transferee district.  Instead, the Court found that even though the related action was no longer

pending, the transferee court was intimately familiar with the action and the facts and

circumstances at issue and that "[i]t would be a patent misuse of judicial resources to require

another Federal District Court…to review and become familiar with facts and circumstances

already extensively excavated by another Federal District Court."  *Id.* at 197.

Here, the interests of justice, judicial administration and economy weigh heavily in favor

of transfer to the Northern District of Illinois.

> **B.  Virgin Has Clearly Established that Transfer Would Serve The Interests of
> Convenience and Fairness**

As discussed in the Moving Memorandum and set forth in detail in the Bart Declaration,

the Northern District of Illinois is more convenient to the parties and the key witnesses.

Plaintiffs are located in Illinois. Anthony Brummel, CEO of Victory and a key witness to

---

[3] The representations by counsel for Plaintiffs in paragraph 20 of his declaration in support of the Opposition that "the parties to the Hawthorne Heights have agreed to settle the action and are awaiting approval of the proposed settlement of the bankruptcy trustees and the bankruptcy court, at which point the Hawthorne Heights Action will be dismissed" are plainly incompetent evidence and should not be considered by the Court.  These allegations are blatant hearsay (likely second or third degree hearsay) and are unsupported by any affidavits from the parties to the Hawthorne Heights Action confirming such conversations or any other documentary evidence.   As such, the allegations should be stricken.

17400.5

whether Victory or Hawthorne Heights breached the Victory Agreement, any damages allegedly suffered by Plaintiffs and Plaintiffs' business expectations, is a citizen and resident of Illinois. Further, the members of Hawthorne Heights, who will be key witnesses for establishing the key elements of Plaintiffs' tortious interference claims, are citizen and residents of Ohio. They have done business in Illinois, but have no connection to New York. None of the witnesses relevant to a determination of the key elements of Plaintiffs' tortious interference claims are present in New York.

Moreover, the locus of operative facts in Plaintiffs' tortious interference claims favor transfer to the Northern District of Illinois. As discussed in the Moving Memorandum, in order to succeed on their tortious interference with contract claim, Plaintiffs will need to demonstrate, *inter alia*, the existence of a valid agreement, that Hawthorne Heights breached such an agreement and that Plaintiffs were damaged as a result of any such breach. *See George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1330 (7th Cir.1983). The Victory Agreement, which is the foundation for Plaintiffs' claims, was executed in Chicago, Illinois.[4] Moreover, the parties' performance under the Victory Agreement, and any alleged breach of the Victory Agreement, would have taken place in Illinois, where Victory was located, and in Ohio, where Hawthorne Heights is located. No relevant conduct would have occurred in New York. Further, any damages suffered by Plaintiffs would have occurred in Illinois. Accordingly, there is no connection between the key operative facts under the tortious interference with contract claim and this district.

---

[4] A copy of the Victory Agreement can be found at Exhibit A to the Hawthorne Heights Complaint, a true and correct copy of which was previously submitted as Exhibit B to the Bart Declaration.

Similarly, in order to succeed on their tortious interference with contract claim, Plaintiffs will need to demonstrate, *inter alia*, that they had a reasonable expectancy of a valid business relationship with Hawthorne Heights, that the prospective business relationship never materializes, and that Plaintiffs were damaged by the alleged interference. *See Lynch v. Ford Inc. v. Ford Motor Co., Inc.*, 957 F.Supp. 142, 146 (N.D.Ill.1997). Again, the operative facts to support this claim would have occurred in Illinois, where Plaintiffs are located -- not New York.

Plaintiffs ignore the compelling connection between the factual disputes at issue and the Northern District of Illinois and instead rely on two assertions -- that there was a meeting or meetings between counsel for Hawthorne Heights and Virgin in New York and that since Virgin is based in New York, this must be where Virgin "hatched, developed and financed the scheme leading up to Hawthorne Heights' termination of the Victory Agreement." While these allegations might sustain an assertion of personal jurisdiction against Virgin, they do not provide a basis for venue. As noted above, the critical issues relevant to the tortious interference claim are clearly linked to the Northern District of Illinois and have no connection to this district.

Finally, Plaintiffs' choice of forum should be entitled to less weight since New York is not their home forum. Plaintiffs are Illinois corporations with their principal places of business in Illinois. Plaintiffs' decision to re-file their tortious interference claims in New York was purely tactical and was done in bad faith. Accordingly, this Court should not give any weight to Plaintiffs' decision to file the instant action in New York. *Robomatix Int'l, Inc. v. Aluminum Co. of America*, No. 92 Civ. 6281, 1993 U.S. Dist. LEXIS 7034, at *4 (S.D.N.Y. May 20, 1993); *Brown v. DOW Corning Corp*, No. 93 CIV 5510, 1996 WL 257614, at *3 (S.D.N.Y, May 15, 1996); *800-Flowers, Inc. v. Intercontinental Flowers, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994); *Kiss My Face Corp. v. Bunting*, 2003 WL 22244587, at *4 (S.D.N.Y. Sept. 30, 2003)

17400.5

("While ordinarily plaintiff's choice of forum is accorded significant weight, when the forum chosen is not the plaintiff's home forum, the choice is given less deference."); *De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F.Supp. 207, 208 (S.D.N.Y.1989). Further, none of those cases that Plaintiffs cite in support of their argument that their choice of forum should be entitled "significant weight" even though Plaintiffs are not residents of the chosen district deal with a situation where the plaintiff is accused of forum-shopping. *See Sunshine Cellular v. Vanguard Cellular Sys., Inc.,* 810 F.Supp. 486-500 (S.D.N.Y. 1992); *Motown Record Corp. v. Mary Jane Girls, Inc.,* 660 F.Supp. 174, 175 (S.D.N.Y. 1987); *Cont'l Pac. Shipping, Ltd. CIT/Equip. Fin., Inc.,* 96 Civ 2646, 1996 WL 571855, *7 (S.D.N.Y. Oct. 7, 1996). Indeed, in one case cited by Plaintiffs, *Mut. Exp. Corp. v. Westpac Banking Corp.*, 742 F. Supp. 161, 163 (S.D.N.Y. 1990), the court expressly found that "on the record before us, there is no indication that plaintiff's decision to file its action here was guided by any motive other than to avail itself of a convenient forum where its adversary would be subject to jurisdiction."

Here, as noted above, Plaintiffs' decision to re-file their tortious interference claims in New York was motivated by their desire to avoid proceeding further before Judge Moran, who had rendered a number of decisions on the merits which are adverse to Plaintiffs and which potentially undermine Plaintiffs' claims against Virgin. As such, Plaintiffs' decision to file here in New York was done in bad faith and warrants no deference by this Court. *See, e.g., Funke v. Life Financial Corp.*, 2003 WL 194204 (S.D.N.Y. Jan. 28, 2003) (recognizing that "plaintiff's choice of forum is to be afforded greater deference when it was motivated by legitimate reasons, including the plaintiff's convenience ... and diminishing deference ... to the extent it was motivated by tactical advantage" and "that the chosen forum is not where the plaintiffs are domiciled does not necessarily mean the choice is afforded less deference; *as long as the choice*

17400.5

*was for legitimate reasons...*") (emphasis added) (internal citations and quotations omitted); *see also Mikkilineni v. Gibson-Thomas Engineering Co*, 2003 WL 1846047 (D.D.C Mar. 31, 2003) (giving less weight to the plaintiff's choice of forum because the plaintiff was forum shopping); *Prof'l Managers' Ass'n v. United States*, 761 F.2d 740, 744 (D.C.Cir.1985).

## CONCLUSION

Plaintiffs have treated this litigation as if it was a game. Their repeated forum-shopping displays disrespect for the courts of both districts and their respective dockets. Plaintiffs' misrepresentations about the status of the Hawthorne Heights Action similarly reflect a belief that attempts to obtain a perceived procedural advantage can trump a litigant's obligation to make truthful and complete representations to the Court. These facts alone compel the relief sought in this motion. However, even apart from Plaintiffs' gamesmanship, this case does not belong in this district. Plaintiffs are located in the transferee district, the primary witnesses for establishing the key elements of Plaintiffs' tortious interference claims are located in Illinois and the operative facts to establish key elements of Plaintiffs' tortious interference claims occurred in Illinois. In light of the foregoing, in the interests of justice based on the totality of the circumstances, this Court should transfer the New York Victory Action to the Northern District of Illinois.

Dated: New York, New York
      May 12, 2008

JENNER & BLOCK LLP

By: _____

Andrew H. Bart
Carletta F. Higginson
919 Third Avenue, 37th Floor
New York, New York  10022
(212) 891-1600

*Attorneys for Defendant Virgin Records America, Inc.*

17400.5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
VICTORY RECORDS, INC., and ANOTHER            :
VICTORY, INC.,                                :
                                              :    Case No.: 08-CV-00314 (PKC)
                                              :
                      Plaintiffs,             :
                                              :    **CERTIFICATE OF SERVICE**
         - against -                          :
                                              :
VIRGIN RECORDS AMERICA, INC.,                 :
a division of EMI MUSIC NORTH AMERICA,        :
                                              :
                      Defendant.              :
-----------------------------------------------------------------X

I, Carletta F. Higginson, do hereby certify that on this 12th day of May 2008 I caused the

within **Reply Memorandum of Law in Further Support of the Motion by Defendant Virgin**

**Records America, Inc. to Transfer or, in the Alternative, Stay this Action** to be filed via the

Southern District of New York's Electronic Case Filing system and caused same to be served via

U.S. First Class mail delivery upon ***Robert S. Meloni, Esq., Meloni and McCaffrey, P.C.***, 1350

Avenue of the Americas, Suite 3100, New York, New York 10019 by having a true and correct

copy of same wrapped in a postage-paid envelope and deposited into the care and custody of the

United States Postal Service.

_____
Carletta F. Higginson